# FARREY, FKA SANDERFOOT *v.* SANDERFOOT

No. 90–350.   Argued March 25, 1991—Decided May 23, 1991

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and MARSHALL, BLACKMUN, STEVENS, O'CONNOR, KENNEDY, and SOUTER, JJ., joined, and in all but the penultimate paragraph of Part III of which SCALIA, J., joined. KENNEDY, J., filed a concurring opinion, in which SOUTER, J., joined, *post*, p. 301.

*Brady C. Williamson* argued the cause for petitioner. With him on the briefs was *Charles J. Hertel.*

*Harvey G. Samson* argued the cause and filed a brief for respondent.

JUSTICE WHITE delivered the opinion of the Court.

In this case we consider whether § 522(f) of the Bankruptcy Code allows a debtor to avoid the fixing of a lien on a homestead, where the lien is granted to the debtor's former spouse under a divorce decree that extinguishes all previous interests the parties had in the property, and in no event secures more than the value of the nondebtor spouse's former interest. We hold that it does not.

I

Petitioner Jeanne Farrey and respondent Gerald Sanderfoot were married on August 12, 1966. The couple eventually built a home on 27 acres of land in Hortonville, Wisconsin, where they raised their three children. On September 12, 1986, the Wisconsin Circuit Court for Outagamie County entered a bench decision granting a judgment of divorce and property division that resolved all contested issues and ter-

minated the marriage. See Wis. Stat. § 767.37(3) (1989–1990). A written decree followed on February 5, 1987.

The decision awarded each party one-half of their net $60,600.68 marital estate. This division reflected Wisconsin's statutory presumption that the marital estate "be divided equally between the parties." § 767.255. The decree granted Sanderfoot sole title to all the real estate and the family house, which was subject to a mortgage and which was valued at $104,000, and most of the personal property. For her share, Farrey received the remaining items of personal property and the proceeds from a court-ordered auction of the furniture from the home. The judgment also allocated the couple's liabilities. Under this preliminary calculation of assets and debts, Sanderfoot stood to receive a net award of $59,508.79, while Farrey's award would otherwise have been $1,091.90. To ensure that the division of the estate was equal, the court ordered Sanderfoot to pay Farrey $29,208.44, half the difference in the value of their net assets. Sanderfoot was to pay this amount in two installments: half by January 10, 1987, and the remaining half by April 10, 1987. To secure this award, the decree provided that Farrey "shall have a lien against the real estate property of [Sanderfoot] for the total amount of money due her pursuant to this Order of the Court, i. e. $29,208.44, and the lien shall remain attached to the real estate property . . . until the total amount of money is paid in full." App. to Pet. for Cert. 57a.

Sanderfoot never made the required payments nor complied with any other order of the state court. Instead, on May 4, 1987, he voluntarily filed for Chapter 7 bankruptcy. Sanderfoot listed the marital home and real estate on the schedule of assets with his bankruptcy petition and listed it as exempt homestead property. Exercising his option to invoke the state rather than the federal homestead exemption, 11 U. S. C. § 522(b)(2)(A), Sanderfoot claimed the property as exempt "to the amount of $40,000" under Wis. Stat.

§ 815.20 (1989–1990).[1] He also filed a motion to avoid Farrey's lien under the provision in dispute, 11 U. S. C. § 522(f)(1), claiming that Farrey possessed a judicial lien that impaired his homestead exemption. Farrey objected to the motion, claiming that § 522(f)(1) could not divest her of her interest in the marital home.[2] The Bankruptcy Court denied Sanderfoot's motion, holding that the lien could not be avoided because it protected Farrey's pre-existing interest in the marital property. *In re Sanderfoot*, 83 B. R. 564 (ED Wis. 1988). The District Court reversed, concluding that the lien was avoidable because it "is fixed on an interest of the debtor in the property." *In re Sanderfoot*, 92 B. R. 802 (ED Wis. 1988).

A divided panel of the Court of Appeals affirmed. *In re Sanderfoot*, 899 F. 2d 598 (CA7 1990). The court reasoned that the divorce proceeding dissolved any pre-existing interest Farrey had in the homestead and that her new interest, "created in the dissolution order and evidenced by her lien, attached to Mr. Sanderfoot's interest in the property." *Id.*, at 602. Noting that the issue had caused a split among the Courts of Appeals, the court expressly relied on those decisions that it termed more "faithful to the plain language of section 522(f)." *Ibid.* (citing *In re Pederson*, 875 F. 2d 781 (CA9 1989); *Maus* v. *Maus*, 837 F. 2d 935 (CA10 1988); *Boyd*

---

[1] Section 815.20 provides in relevant part:

"Homestead exemption definition.

"(1) An exempt homestead as defined in s. 990.01(14) selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment and from liability for the debts of the owner to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. . . . The exemption extends to the interest therein of the tenants in common, having a homestead thereon with the consent of the cotenants, and to any estate less than a fee."

[2] Farrey also objected to her former husband's valuation of the home at $82,750 in his bankruptcy filings. Neither the Bankruptcy Court, the District Court, nor the Court of Appeals resolved this dispute on the merits.

v. *Robinson*, 741 F. 2d 1112, 1115 (CA8 1984) (Ross, J., dissenting)).

Judge Posner, in dissent, argued that to avoid a lien under § 522(f), a debtor must have an interest in the property at the time the court places the lien on that interest. Judge Posner concluded that because the same decree that gave the entire property to Sanderfoot simultaneously created the lien in favor of Farrey, the lien did not attach to a pre-existing interest of the husband. The dissent's conclusion followed the result, though not the rationale, of *Boyd, supra, In re Borman*, 886 F. 2d 273 (CA10 1989), and *In re Donahue*, 862 F. 2d 259 (CA10 1988).

We granted certiorari to resolve the conflict of authority. 498 U. S. 980 (1990). We now reverse the Court of Appeals' judgment and remand.

## II

Section 522(f)(1) provides in relevant part:

> "Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> "(1) a judicial lien . . . ."

The provision establishes several conditions for a lien to be avoided, only one of which is at issue. See *In re Hart*, 50 B. R. 956, 960 (Bkrtcy. Ct. Nev. 1985). Farrey does not challenge the Court of Appeals' determination that her lien was a judicial lien, 899 F. 2d, at 603–605, nor do we address that question here. The Court of Appeals also determined that Farrey had waived any challenge as to whether Sanderfoot was otherwise entitled to a homestead exemption under state law, *id.*, at 603, and we agree. See *Owen* v. *Owen*, *post*, p. 305. The sole question presented in this case is whether § 522(f)(1) permits Sanderfoot to avoid the fixing of

Farrey's lien on the property interest that he obtained in the divorce decree.

The key portion of § 522(f) states that "the debtor may avoid the fixing of a lien on an interest . . . in property." Sanderfoot, following several Courts of Appeals, suggests that this phrase means that a lien may be avoided so long as it is currently fixed on a debtor's interest. Farrey, following Judge Posner's lead, reads the text as permitting the avoidance of a lien only where the lien attached to the debtor's interest at some point after the debtor obtained the interest.

We agree with Farrey. No one asserts that the two verbs underlying the provision possess anything other than their standard legal meaning: "avoid" meaning "annul" or "undo," see Black's Law Dictionary 136 (6th ed. 1990); H. R. Rep. No. 95–595, pp. 126–127 (1977), and "fix" meaning to "fasten a liability upon," see Black's Law Dictionary, *supra*, at 637. The statute does not say that the debtor may undo a lien on an interest in property. Rather, the statute expressly states that the debtor may avoid "the fixing" of a lien on the debtor's interest in property. The gerund "fixing" refers to a temporal event. That event—the fastening of a liability—presupposes an object onto which the liability can fasten. The statute defines this pre-existing object as "an interest of the debtor in property." Therefore, unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1).[3]

---

[3] Other provisions of the Code likewise indicate that Congress used the term "fixing" to refer to the timing of an event. Section 545(1), for example, provides:

"The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

"(1) *first becomes* effective against the debtor—

"(A) *when* a case under this title concerning the debtor is commenced;

"(B) *when* an insolvency proceeding other than under this title concerning the debtor is commenced;

This reading fully comports with the provision's purpose and history. See *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 242 (1989). Congress enacted §522(f) with the broad purpose of protecting the debtor's exempt property. See S. Rep. No. 95–989, p. 77 (1978); H. R. Rep. No. 95–595, *supra*, at 126–127. Ordinarily, liens and other secured interests survive bankruptcy. In particular, it was well settled when §522(f) was enacted that valid liens obtained before bankruptcy could be enforced on exempt property, see *Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555, 582–583 (1935), including otherwise exempt homestead property, *Long* v. *Bullard*, 117 U. S. 617, 620–621 (1886). Congress generally preserved this principle when it comprehensively revised bankruptcy law with the Bankruptcy Reform Act of 1978, Pub. L. 95–598, 92 Stat. 2587, 11 U. S. C. §522(c)(2)(A)(i). But Congress also revised the law to permit the debtor to avoid the fixing of some liens. See, *e. g.*, 11 U. S. C. §545 (statutory liens).

Section 522(f)(1), by its terms, extends this protection to cases involving the fixing of judicial liens onto exempt property. What specific legislative history exists suggests that a principal reason Congress singled out judicial liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts. As the House Report stated:

> "The first right [§522(f)(1)] allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists

---

"(C) *when* a custodian is appointed or authorized to take or takes possession;

"(D) *when* the debtor become insolvent;

"(E) *when* the debtor's financial condition fails to meet a specified standard; or

"(F) *at the time* of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien." 11 U. S. C. §545(1) (emphasis added).

to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions." H. R. Rep. No. 95–595, *supra*, at 126–127.

One factor supporting the view that Congress intended § 522(f)(1) to thwart a rush to the courthouse is Congress' contemporaneous elimination of § 67a of the 1898 Bankruptcy Act, 30 Stat. 564. Prior to its repeal, § 67a invalidated any lien obtained on an exempt interest of an insolvent debtor within four months of the bankruptcy filing. The Bankruptcy Reform Act eliminated the insolvency and timing requirements. It is possible that Congress simply decided to leave exemptions exposed despite its longstanding policy against doing so. But given the legislative history's express concern over protecting exemptions, it follows instead that § 522(f)(1) was intended as a new device to handle the old provision's job by "giv[ing] the debtor certain rights not available under current law with respect to exempt property." H. R. Rep. No. 95–595, *supra*, at 126–127.

Conversely, the text, history, and purpose of § 522(f)(1) also indicate what the provision is *not* concerned with. It cannot be concerned with liens that fixed on an interest before the debtor acquired that interest. Neither party contends otherwise. Section 522(f)(1) does not state that any fixing of a lien may be avoided; instead, it permits avoidance of the "fixing of a lien on an interest of the debtor." If the fixing took place before the debtor acquired that interest, the "fixing" by definition was not on the debtor's interest. Nor could the statute apply given its purpose of preventing a creditor from beating the debtor to the courthouse, since the debtor at no point possessed the interest without the judicial lien. There would be no fixing to avoid since the lien was already there. To permit lien avoidance in these circumstances, in fact, would be to allow judicial lienholders to be defrauded through the conveyance of an encumbered interest to a prospective debtor. See *In re McCormick*, 18 B. R.

911, 913–914 (Bkrtcy. Ct. WD Pa. 1982).   For these reasons, it is settled that a debtor cannot use § 522(f)(1) to avoid a lien on an interest acquired after the lien attached.   See, *e. g.*, *In re McCormick*, *supra; In re Stephens*, 15 B. R. 485 (Bkrtcy. Ct. WD NC.1981); *In re Scott*, 12 B. R. 613 (Bkrtcy. Ct. WD Okla. 1981).   As before, the critical inquiry remains whether the debtor ever possessed the interest to which the lien fixed, before it fixed.   If he or she did not, § 522(f)(1) does not permit the debtor to avoid the fixing of the lien on that interest.

## III

We turn to the application of § 522(f)(1) to this case.

Whether Sanderfoot ever possessed an interest to which the lien fixed, before it fixed, is a question of state law. Farrey contends that prior to the divorce judgment, she and her husband held title to the real estate in joint tenancy, each possessing an undivided one-half interest.   She further asserts that the divorce decree extinguished these previous interests.   At the same time and in the same transaction, she concludes, the decree created new interests in place of the old: for Sanderfoot, ownership in fee simple of the house and real estate; for Farrey, various assets and a debt of $29,208.44 secured by a lien on the Sanderfoot's new fee simple interest.   Both in his briefs and at oral argument, Sanderfoot agreed on each point.   Brief for Respondent 7–8; Tr. of Oral Arg. 39.

On the assumption that the parties characterize Wisconsin law correctly, Sanderfoot must lose.   Under their view, the lien could not have fixed on Sanderfoot's pre-existing undivided half interest because the divorce decree extinguished it.   Instead, the only interest that the lien encumbers is debtor's wholly new fee simple interest.   The same decree that awarded Sanderfoot his fee simple interest simultaneously granted the lien to Farrey.   As the judgment stated, he acquired the property "free and clear" of any claim "except as expressly provided in this [decree]."   App. to Pet.

for Cert. 58a.   Sanderfoot took the interest and the lien to-
gether, as if he had purchased an already encumbered estate
from a third party.   Since Sanderfoot never possessed his
new fee simple interest before the lien "fixed," § 522(f)(1) is
not available to void the lien.

The same result follows even if the divorce decree did not
extinguish the couple's pre-existing interests but instead
merely reordered them.   The parties' current position not-
withstanding, it may be that under Wisconsin law the divorce
decree augmented Sanderfoot's previous interest by adding
to it Farrey's prior interest.   If the court in exchange sought
to protect Farrey's previous interest with a lien, § 522(f)(1)
could be used to undo the encumbrance to the extent the lien
fastened to any portion of Sanderfoot's previous surviving in-
terest.   This follows because Sanderfoot would have pos-
sessed the interest to which that part of the lien fixed, before
it fixed.   But in this case, the divorce court did not purport
to encumber any part of Sanderfoot's previous interest even
on the assumption that state law would deem that interest to
have survived.   The decree instead transferred Farrey's
previous interest to Sanderfoot and, again simultaneously,
granted a lien equal to that interest minus the small amount
of personal property she retained.   Sanderfoot thus would
still be unable to avoid the lien in this case since it fastened
only to what had been Farrey's pre-existing interest, and this
interest Sanderfoot would never have possessed without the
lien already having fixed. [4]

The result, on either theory, accords with the provision's
main purpose.   As noted, the legislative history suggests
that Congress primarily intended § 522(f)(1) as a device
to thwart creditors who, sensing an impending bankruptcy,
rush to court to obtain a judgment to defeat the debtor's
exemptions.   That is not what occurs in a divorce proceed-
ing such as this.   Farrey obtained the lien not to defeat

---

[4] JUSTICE SCALIA does not join in this paragraph.

Sanderfoot's pre-existing interest in the homestead but to protect her own pre-existing interest in the homestead that was fully equal to that of her spouse. The divorce court awarded the lien to secure an obligation the court imposed on the husband in exchange for the court's simultaneous award of the wife's homestead interest to the husband. We agree with Judge Posner that to permit a debtor in these circumstances to use the Code to deprive a spouse of this protection would neither follow the language of the statute nor serve the main goal it was designed to address.

## IV

We hold that § 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest. Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY, with whom JUSTICE SOUTER joins, concurring.

I agree with the Court's holding that a debtor cannot use § 522(f)(1) of the Bankruptcy Code to avoid a lien on an interest the debtor acquired after the lien attached. I agree also with the Court's determination that respondent conceded what we all now know to be the key point in the case. In describing the effect of the Outagamie County Circuit Court's decree on the real property in question, the husband stated in his brief before this Court:

> "Prior to the judgment of divorce, the parties held title to the real estate in joint tenancy, each holding a pre-existing undivided one-half interest. At the point that the divorce court issued its property division determination, those property rights were wholly extinguished and new rights were put into place." Brief for Respondent 7–8.

This concession is fatal to the argument respondent must make to prevail here, which is that the judicial lien fixed upon his pre-existing interest in the property. With the case in this posture, though, the possibility arises that later cases, whether from Wisconsin or from some other jurisdiction, could yield a different result. This would depend upon the relevant state laws defining the estate owned by a spouse who had a pre-existing interest in marital property and upon state laws governing awards of property under a decree settling marital rights.

In this case, prior to the Circuit Court decree ordering the property division, respondent had a vested, present, and undivided interest in one-half the marital property. The relevant Wisconsin statutes, enacted when the State adopted substantial parts of the Uniform Marital Property Act, provide that "[a]ll property of spouses is presumed to be marital property," Wis. Stat. § 766.31(2) (1989–1990), and "[e]ach spouse has a present undivided one-half interest in each item of marital property." § 766.31(3). Absent respondent's concession, it would seem that the state court did not divest him of his pre-existing interest. At no place in its "Findings of Fact, Conclusions of Law, and Judgment of Divorce" did the court declare that respondent's predecree interests were extinguished. Rather, the decree declared that upon its effective date sole title to the property vested in respondent. It also gave respondent's wife a lien against the home to secure the debt he owed her to equalize the property settlement. Finally, it divested each party of "any and all right, title and interest in and to the property awarded to the other." App. to Pet. for Cert. 58a. As I read these provisions, respondent obtained from his wife her one-half interest in the home, while always retaining his one-half interest as well. Because no interest in the home, other than the lien, was awarded to respondent's wife, respondent was never divested of any interest.

This interpretation conforms to the result mandated if a marriage terminates without any decree for property division. Wisconsin law provides that "[a]fter a dissolution each former spouse owns an undivided one-half interest in the former marital property as a tenant in common." Wis. Stat. § 766.75 (1989–1990). So too, if one spouse were to make a voluntary transfer of his or her one-half interest to the other spouse, I should not think it could be said that the transferee's prior interest had been extinguished. Rather, the transferee would retain his or her own interest, and the two interests would be merged into a single estate. See *Thauer* v. *Smith*, 213 Wis. 91, 95, 250 N. W. 842, 844 (1933). A state-law scheme in this pattern is to be distinguished, of course, from a regime in which a tenancy by the entirety is recognized and is deemed a single interest owned by the marital entity, a regime in which the estate dissolves when the marriage does. See *McCormick* v. *Mid-State Bank & Trust Co.*, 22 B. R. 997 (WD Pa. 1982) (applying Pennsylvania law). Thus, it is not at all clear that as a matter of state law the judicial lien could not attach to the husband's predecree interest in his one-half of the marital property. If so, respondent could use § 522(f)(1) to avoid at least part of his wife's lien.

The result the Court reaches consists with fairness and common sense. Since the Outagamie County Circuit Court had the power to strip the husband of his interest altogether, it can be reasoned that the court granted him the entire property on the condition that his prior interest would terminate and that a lien would attach to a new interest in the whole. The problem with this argument, however, is that there is no indication in the record that the husband consented to the decree. A waiver of this sort may also be contrary to the nonwaiver provision of § 522(f).

Following this analysis, I believe the Bankruptcy Code may be used in some later case to allow a spouse to avoid otherwise valid obligations under a divorce court decree.

Though adept drafting of property decrees or the use of court orders directing conveyances in a certain sequence might resolve the problem, it appears that congressional action may be necessary to avoid in some future case the perhaps unjust result the Court today avoids having to consider only because of the fortuity of a litigant's concession. With these observations, I concur in the opinion and the judgment of the Court.