In re Clarence A. HAYNES, Debtor.

Bankruptcy No. 91–2060–RWV–7.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Nov. 16, 1992.

U.S. Trustee, Indianapolis, IN.

David R. Krebs, Hostetler & Kowalik, Indianapolis, IN, for debtor.

Paul F. Vertesch, Dennis & Vertesch, Richmond, IN, Paul T. Deignan, Ancel & Dunlap, Indianapolis, IN, for Phyllis Truex.

### ENTRY DENYING MOTION FOR AVOIDANCE OF JUDICIAL LIEN

RICHARD W. VANDIVIER, Bankruptcy Judge.

This matter comes before the Court on the Motion for Avoidance of Judicial Lien, filed by the Debtor on March 5, 1991, and on the objection thereto filed by Phyllis Truex ("Truex") on March 26, 1991. The matter was heard on June 11, 1992. The Court now denies the motion for the reasons below, which shall constitute this Court's findings of fact and conclusions of law.

*Background*

In 1978 or 1979, the Debtor and his brother, Daniel Haynes ("Daniel"), purchased about 37 acres of real property, which they held as tenants in common. In June 1979, Daniel built a house on half of the property, and the Debtor subsequently deeded that part of the property to Daniel. In 1981, the Debtor built a log house on the other half of the property ("the Property"), but Daniel did not deed his interest in that half to the Debtor because the Debtor owed him money on a loan Daniel had made to him. He intends to sign over his interest in the Property when the debt is paid, but not until then.

Since January 1982, the Debtor has made his living selling log homes on commission. To receive his commission, he must advertise, do home shows and sell homes. After the sale, he must remain in contact with the buyer and do some supervision of the job site during the erection of the home.

On April 25, 1981, the Debtor and Truex were married, on February 29, 1988, Truex filed a petition for dissolution, and on July 3, 1990, they were divorced by decree of the Wayne Superior Court, Cause No. 89–D02–8802–DR–013. According to the decree, the court attempted to divide the marital property equally between the parties (para. 30). The Debtor was awarded most of the marital property, including the Property, valued by the court at that time at $78,000 (para. 25). The Debtor was to pay the marital debts of $89,109.84 (para. 26) and hold Truex harmless for claims therefrom. In addition, the Debtor was to pay Truex $17,750 to equalize the division of property and to compensate Truex for uncovered medical bills of $151.31. The decree further stated:

Respondent's [Debtor's] obligation to make such payment shall be secured by second mortgage upon the real estate herein awarded to Respondent [the Prop-

erty] and security interest in the assets of the business in selling log homes herein awarded to Respondent, which security interest and second mortgage shall be on standard terms and conditions for Wayne County, Indiana, and prepared by Petitioner's counsel, such documents to be prepared by Petitioner's counsel and executed by Respondent within one (1) month from this date....

Before compliance with this provision, the Debtor filed for bankruptcy relief.

According to Truex's testimony, the logs for the house on the Property were received in July 1981, and money for improvements to the Property was obtained through a mortgage loan that was partly paid during the marriage. During the marriage, Truex worked off and on in the Debtor's business. According to the Debtor, the logs for the house were purchased before the marriage, Truex's name was not on the mortgage, and he made all the payments on the house.

On February 27, 1991, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. According to the Debtor's schedules, the Property has a value of $68,000, and is encumbered with a $63,000 mortgage to Bank One, Richmond, NA. He claims the $5000 in equity, which he disclosed is owned jointly with Daniel, as exempt under Ind.Code 34–2–28–1. The Debtor asserts that Truex's judgment from the divorce court may be a judicial lien impairing this claimed exemption, and if so, seeks to avoid the lien under 11 U.S.C. section 522(f)(1).

*Discussion of Law*

The Court has jurisdiction over this matter. 28 U.S.C. section 157(B)(2)(K).

> [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ..., if such lien is—
> (1) a judicial lien....

11 U.S.C. section 522(f)(1).

*—Judicial Lien v. Security Interest*

Truex argues that her interest in the Property should be considered a security interest rather than a judicial lien, because if the Debtor had complied with the divorce decree, she would have a security interest under the terms of a mortgage. A judicial lien is defined as "a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding...." 11 U.S.C. section 101(36). By contrast, a security interest is "a lien created by an agreement...." 11 U.S.C. section 101(51).

While most liens arising from mortgages would be security interests rather than judicial liens, the Court cannot agree that this would have been the case had the Debtor executed a mortgage. This Court would look to substance over form in determining whether a lien is a judicial lien or a security interest. The key is not the name of the document creating the lien, but whether the lien arose by agreement or by a nonconsensual legal or equitable process. The execution of a mortgage under order of a court and under threat of contempt if the debtor does not obey would not create a lien by agreement. *See In re Shestko-Montiel*, 125 B.R. 801, 804 (Bankr.D.Ariz. 1991). The Court therefore concludes that to the extent Truex holds a valid lien on the Property, it is a judicial lien as opposed to a security interest.

*—Farrey v. Sanderfoot*

The analysis of whether a judicial lien arising from a divorce proceeding may be avoided must begin with *Farrey v. Sanderfoot*, — U.S. —, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). In that case, the divorce court had awarded the debtor, Sanderfoot, the marital home, which had been owned by the parties in joint tenancy. To equalize the division of the marital estate, the court ordered Sanderfoot to pay Farrey approximately $30,000, and provided that Farrey should have a lien on the home in that amount. Sanderfoot made no payment to Farrey, instead seeking bankruptcy relief and moving to avoid the lien. *Id.*, — U.S. at —, 111 S.Ct. at 1827. Noting a split in authority on whether such liens could be avoided, the Supreme Court granted review.

The court found that the key portion of section 522(f), that "the debtor may avoid the fixing of a lien on an interest in ... property", means that a debtor may avoid the event of "fixing" of a lien on a pre-existing interest in the property. *Id.,* —— U.S. at —— – ——, 111 S.Ct. at 1828–29. "[U]nless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of sec. 522(f)(1)." *Id.,* —— U.S. at ——, 111 S.Ct. at 1829.

Noting that "[w]hether Sanderfoot ever possessed an interest to which the lien fixed, before it fixed, is a question of state law", and assuming that the parties' characterization of Wisconsin law was correct, i.e. that the divorce decree extinguished the parties' undivided one-half interests and replaced them with new interests, the court held Sanderfoot must lose. *Id.,* —— U.S. at ——, 111 S.Ct. at 1830. Because the same decree that awarded Sanderfoot his fee simple interest simultaneously granted the lien to Farrey, Sanderfoot took the interest and lien together. "Since Sanderfoot never possessed his new fee simple interest before the lien "fixed", sec. 522(f)(1) is not available to void the lien." *Id.,* —— U.S. at ——, 111 S.Ct. at 1831.

The court (with the exception of Justice Scalia) also concluded that "[t]he same result follows even if the divorce decree did not extinguish the couple's pre-existing interests but instead merely reordered them." *Id.* If, under state law, the divorce decree augmented Sanderfoot's previous interest [i.e. the undivided one-half interest] by adding to it Farrey's prior interest, and the decree sought to protect Farrey's previous interest with a lien, "sec. 522(f)(1) could be used to undo the encumbrance to the extent the lien fastened to any portion of Sanderfoot's previous surviving interest." *Id.* However, in this case, the divorce court did not purport to encumber any part of Sanderfoot's previous interest, assuming it survived, but instead transferred Farrey's previous interest to Sanderfoot while simultaneously granting a lien equal to that interest (mi-

nus the value of a small amount of personal property she retained). Thus, Sanderfoot could not have avoided the lien since it would fasten only to what had been Farrey's pre-existing interest. *Id.*

A concurring opinion noted that this case does not decide the avoidability of all liens imposed in divorces, but that the outcome depends "upon the relevant state laws defining the estate owned by a spouse who had a pre-existing interest in marital property and upon state laws governing awards of property under a decree settling marital rights." *Id.,* —— U.S. at ——, 111 S.Ct. at 1832.

Two subsequent cases are instructive in the application of *Sanderfoot.* In *In re Finch,* 130 B.R. 753 (S.D.Tex.1991), a divorce court had awarded the husband property that had been community real estate during the marriage and awarded the wife a money judgment secured by an equitable lien against the property. When the husband filed for bankruptcy relief and attempted to avoid the lien, the court held the lien nonavoidable, concluding that the husband's undivided community property interest was divested and replaced by his new sole ownership interest, to which the wife's lien contemporaneously attached. *See id.* at 756–57. In contrast, in *In re Wright,* 135 B.R. 871 (Bankr.W.D.Mo.1992), in which the property was the debtor's sole property before the marriage and the Missouri divorce court had found that the property was "nonmarital property", the debtor was allowed to avoid his former wife's lien, imposed by the divorce court, since it attached to his pre-existing interest in the property.

This Court must next turn to Indiana law to determine to what extent, if any, Truex's purported lien attached to a pre-existing interest of the Debtor.

*—Indiana Law*

■ Division of property in a dissolution proceeding is governed by Ind.Code 31-1-11.5-11, which provides:

(b) In [a dissolution action], the court shall divide the property of the parties, whether owned by either spouse prior to

the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, ...

(c) The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence ... that an equal division would not be just and reasonable....

Regardless of the source, property owned by the parties are not excluded from the "marital pot", are not beyond the scope of the court's authority for division, and are subject to the equal division presumption. *See In re Davidson,* 540 N.E.2d 641, 646 (Ind.Ct.App.1989). The court may, in dividing marital property, transfer property held individually or jointly, and may transfer to one party property previously settled in the other. *See* 10A I.L.E. *Divorce* sec. 131.

■ Thus, while the Debtor had an interest in the Property in his name alone before the marriage to Truex (i.e. the interest he shared with Daniel as tenants in common), and although that interest legally remained in his name alone during the marriage, under Indiana law that interest became part of the "marital pot" and the Debtor could not exit the marriage without the divorce court's administering his interest in the Property as part of its duty to divide the marital property. In other words, the Debtor's pre-marriage interest in the Property could not pass through the marriage and divorce unaffected. The interest the Debtor had when he left the marriage was not the same interest he had when he entered the marriage. It was within the divorce court's power, in dividing the marital property, to divide the interest between the Debtor and Truex, to give the interest to Truex (and perhaps order Truex to pay the Debtor for it), or order it sold and the proceeds divided. *See* Ind. Code 31–1–11.5–11(b). When the divorce court instead returned the interest in the Property to the Debtor, it simultaneously ordered that it should be charged with a lien in Truex's favor to secure the amount the Court found the Debtor should pay Truex to effect a just and reasonable property division.

This case is more similar to *Finch* than to *Wright.* While Indiana is not a community property state, the inclusion of both spouses' property, however held, into a "marital pot" for presumptively equal division has much the same effect as the Texas community property law in *Finch.* And although the Debtor in this case, as the debtor in *Wright,* owned the property at issue in his name before the during the marriage, in this case, in contrast to *Wright,* the property was treated as marital property subject to division by the divorce court.

*Conclusion*

■ Applying the principles of *Sanderfoot* to Indiana law and the specific case before the Court, the Court concludes that to the extent that Truex has a lien against the Property pursuant to the dissolution decree, that lien in non-avoidable under 11 U.S.C. section 522(f)(1).

The issue of the validity of Truex's lien, however, was not fully briefed by the parties, and the Court therefore declines to decide this issue of state law. The Court leaves that decision to the appropriate state court if and when Truex brings an action to enforce her purported lien. The Court decides only that to the extent Truex acquired a lien against the Property in the divorce proceeding, that lien is unaffected by the Debtor's bankruptcy.

The Court therefore DENIES the Debtor's Motion for Avoidance of Judicial Lien.

SO ORDERED.