**In re Abdon C. GARCIA, Debtor,**

**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,**

**v.**

**Abdon C. GARCIA, Appellee.**

**Bankruptcy No. 93 C 1281.**

United States District Court, N.D. Illinois, E.D.

May 21, 1993.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Appellant General Motors Acceptance Corporation ("GMAC") brings this appeal from an order of the United States Bankruptcy Court of the Northern District of Illinois. The bankruptcy court ruled that appellee Abdon C. Garcia ("Garcia") could avoid a judicial lien on wages that had been deducted pursuant to a valid wage deduction proceeding. After careful consideration, we affirm the bankruptcy court's ruling.

### I. Factual Background

On May 29, 1992, the Circuit Court of Cook County entered judgment in favor of GMAC and against Garcia in the amount of $6,946.26 plus costs. To collect on the judgment, GMAC initiated a wage deduction proceeding in the Circuit Court. Pursuant to Illinois' Wage Deduction Statute, a summons and interrogatories, with a return date of September 18, 1992, were served upon Garcia's employer, R.G. Ray Corporation ("Ray Corporation"). Ill.Rev. Stat. ch. 110, ¶ 12–801, et seq. As required by the summons, Ray Corporation began withholding an amount certain from Garcia's paychecks.

On June 22, 1992, Garcia filed for relief under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 101, et seq. As a result of Garcia's bankruptcy petition, all actions against him were stayed. 11 U.S.C. § 362. Consequently, Ray Corporation stopped deducting from Garcia's wages, and the Circuit Court never entered an order in GMAC's wage deduction action.

In his bankruptcy schedules, Garcia declared his withheld wages exempt from judgment or attachment.[1] When GMAC objected, citing the wage deduction proceeding, Garcia moved under section 522(f)(1) of the Bankruptcy Code to avoid the judicial lien on his exempt property, namely the $280.95 of withheld wages still held by Ray Corporation. On January 11, 1993, Bankruptcy Judge Ronald Barliant granted Garcia's motion to avoid the wage deduction lien on his deducted wages, and directed Ray Corporation to return the funds to Garcia. 149 B.R. 530 GMAC now appeals that order.[2]

### II. Discussion

Under Illinois' Wage Deduction Statute, once a judgment creditor files an affidavit and written interrogatories (to be answered by the judgment debtor's employer) with the clerk of the state court, the clerk issues a summons against the employer directing him to appear in court and to answer the interrogatories. Upon receipt of the summons, the employer must begin withholding the appropriate amount of wages due, or which become due.[3] Additionally, on or before the return date specified in the summons, the employer must answer the interrogatories.

For his part, the debtor receives a wage deduction notice which informs him of the wage deduction proceedings against him, and notifies him that "[he has] the right to request a hearing before the court to dispute the wage deduction because the wages are exempt." Ill.Rev.Stat. ch. 110, ¶ 12–805. See also Ill.Rev.Stat. ch. 110, ¶ 12–811(b) ("At any time on or before the return date, the judgment debtor may request a hearing to dispute the wage deduction because the wages are exempt...."). Once any necessary hearing has been held, the court enters a deduction order, deter-

---

1. Illinois' "wild card" exemption provides that a debtor may exempt certain personal property, including "[t]he debtor's equity interest, not to exceed $2,000 in value, in any other property [not elsewhere delineated in § 12–1001]." Ill. Rev.Stat. ¶ 12–1001(b).

2. Ray Corporation continues to hold the disputed funds, pending the outcome of litigation.

3. Ill.Rev.Stat. ch. 110, ¶ 12–808(b) provides, in relevant part:

 To the extent of the amount due upon the judgment and costs, the employer shall hold, subject to order of court, any non-exempt wages due or which subsequently come due. The judgment or balance due thereon is a lien on wages due at the time of the service of summons....

mining the proper disposition of the wages being held by the employer.

■ Here, Garcia filed for bankruptcy before the state court could enter a deduction order. At the same time, Garcia declared his deducted wages exempt under Ill.Rev.Stat. ch. 110, ¶ 12–1001(b). GMAC contends that the issuance of the summons to Ray Corporation extinguished Garcia's interest in the deducted wages. Absent any interest in the wages, Garcia was barred from declaring them exempt from the bankruptcy estate, since (1) he could not exempt property in which he had no interest, and (2) the wages would never have become part of the estate.[4] Accordingly, Garcia could not avoid the wage deduction lien under 11 U.S.C. § 522(f)(1).[5]

Garcia, on the other hand, argues that in the absence of a final deduction order, he had a continuing interest in the deducted wages. Given that interest, the withheld funds were properly exempt under ¶ 12–1001(b), and, therefore, the bankruptcy court correctly permitted him to avoid the wage deduction lien.

GMAC faces an uphill struggle in its pursuit of these funds. On two separate occasions, the Bankruptcy Court for the Northern District thoroughly reviewed this exact question, and held that a judgment debtor continues to have an interest in wages being withheld pursuant to a valid wage deduction proceeding until such time as a final deduction order is entered. *See In re Weatherspoon*, 101 B.R. 533 (Bankr. N.D.Ill.1989) (Barliant, J.) (Court granted debtor's motion to avoid a judicial lien under § 522(f)(1) where debtor filed for bankruptcy after creditor instituted wage deduction proceedings, but before court entered deduction order, stating that "mere service of a wage deduction summons does not terminate the debtor's interest in the

affected wages, and only gives the creditor the right to have those funds applied to the judgment by court order."); *In re Johnson*, 53 B.R. 919 (Bankr.N.D.Ill.1985) (In identical circumstances to the case at hand, the court permitted the debtor to avoid the wage deduction lien on his deducted pay, stating that "[a]lthough the garnishment summons creates a lien on the debtor's wages, it does not divest the debtor of his or her interest in the wages," instead, "until the court enters the wage deduction order, the debtor maintains an interest in those wages."). Specifically, the *Weatherspoon* court has ruled that, in light of a debtor's right and standing to contest the wage deduction up to the return date, the issuance of a summons does not terminate a debtor's interest in deducted wages. Rather, termination of a debtor's interest will occur only upon the court's entry of a final deduction order. In *Bryant v. General Electric Credit Corp.*, 58 B.R. 144 (N.D.Ill.1986), Judge Duff employed this interpretation, holding that a debtor could avoid a wage deduction lien where a wage deduction order never issued.

Despite the consistency of the Northern District's treatment of this question, GMAC attacks the courts' reasoning on various grounds. Because we are persuaded by Judge Barliant's careful analysis in *Weatherspoon* and below, we reject GMAC's criticisms and affirm that it is a final deduction order, not the wage deduction summons, which divests the debtor of his interest in deducted wages.

■ GMAC next argues that amendments to Illinois law preclude debtors from claiming an exemption in wages properly withheld pursuant to a valid wage deduction proceeding. GMAC contends that the Illinois General Assembly, in a political compromise, amended the law to prevent

---

**4.** A bankruptcy estate consists of

... all the following property, wherever located and by whomever held:
 (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case....
11 U.S.C. § 541(a).

**5.** § 522(f)(1) states that

[n]otwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
 (1) a judicial lien....
11 U.S.C. § 522(f).

debtors from exempting wages once a wage deduction proceeding had been commenced. The plain language of the amendment to ¶ 12–1001, however, suggests otherwise. The revised version of ¶ 12–1001 provides that

> [t]he personal property exemptions set forth in this Section shall not apply to or be allowed against any money, salary, or wages due or to become due to the debtor that were required to be withheld and upon which a wage deduction order has been entered under part 8 of Article XIII.

Ill.Rev.Stat. ch. 110, ¶ 12–1001. We find, along with the bankruptcy court, that this passage clearly prohibits exemption only of those wages *"upon which a wage deduction order has been entered."* [6] Because the state court never entered a final deduction order here, this provision does not apply.

■ Finally, in reliance on *Farrey v. Sanderfoot,* — U.S. —, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), GMAC argues that because Garcia did not obtain an interest in the garnished wages until they were already subject to a lien, there was no fixing of a lien on Garcia's property as required under § 522(f)(1). Under § 522(f)(1), a debtor must have possessed a clear interest in property before a lien attached in order to avoid the fixing of a lien on that property. "If the fixing took place before the debtor acquired that interest, the 'fixing' by definition was not on the debtor's interest," and therefore could not be avoided under § 522(f)(1). *Id.* — U.S. at —, 111 S.Ct. at 1829. The question, then, is whether Garcia had an interest in his wages prior to the fixing of the wage deduction lien.

■ We observe at the outset that § 522(f)(1) is designed to protect a bankrupt debtor's entitlement to all of his exemptions, even in the event that a creditor beats him to the courthouse and obtains a lien on property that would otherwise be exempt. *See Farrey,* — U.S. at — —, 111 S.Ct. at 1829–30. § 522(f)(1), however, does not permit a debtor to avoid liens which attached before the debtor ever acquired an interest in the property. In those circumstances, creditors' rights, appropriately, may not be circumvented.

In *Farrey,* the debtor and his former wife owned real property as joint-tenants. The divorce decree terminated the joint tenancy and awarded the property to the debtor. The decree simultaneously granted the debtor's former wife, Farrey, a lien on the real property. The Supreme Court held that when the debtor obtained his interest in the property, it was already subject to the judicial lien.

Similarly, GMAC argues that once the wage deduction summons issued, Garcia could only acquire an interest in his wages subject to the wage deduction lien. The bankruptcy court rejected this argument, distinguishing between the real property in *Farrey,* which the debtor received already subject to a lien, and Garcia's interest in his wages, which he acquired by virtue of an employment contract entered into long before GMAC ever promulgated wage deduction proceedings. While there is logic to both positions, to find for GMAC on this issue would thwart the objectives of § 522(f)(1).

This is a classic case of a creditor beating a debtor to the courthouse. GMAC initiated wage deduction proceedings just a few weeks before Garcia filed for bankruptcy. Unlike the debtor in *Farrey,* prior to the wage deduction action, Garcia would have been able to exempt his wages. Accordingly, the goals of § 522(f)(1) would be achieved best by permitting Garcia to avoid the wage deduction lien here and exempt the withheld wages.[7]

---

6. GMAC's claims of statutory ambiguity, which derive from the amendment's legislative history, are unavailing where, as here, the statutory language is plain on its face. *See Gang v. United States,* 783 F.Supp. 376, 380 (N.D.Ill.1992) (no need to review a statute's legislative history when its language is clear and unambiguous).

7. This ruling does not deprive creditors who employ wage deduction actions of all protection. Instead, it means that a bankrupt debtor will be afforded the protection envisioned under § 522(f)(1) during the pendency of wage deduction proceedings. As discussed above, once a final deduction order is entered, a debtor can

### III. Conclusion

For the foregoing reasons, we affirm the bankruptcy court's ruling. It is so ordered.

no longer exempt the deducted wages. Ill.Rev. Stat. ch. 110, ¶ 12–1001.