## In re J.R. BUFFINGTON, Debtor.

### Bankruptcy No. 93–90950.

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

May 9, 1994.

Thomas Koniuszy, Offerman, Coker & Koniuszy, Beaumont, TX, for Carolyn Sue Buffington.

Shelley M. Solow, Huntsville, TX, for debtor.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before the Court the Motion of Carolyn Sue Buffington for Relief from Automatic Stay pursuant to regular setting in Beaumont, Texas. Also before the Court for consideration is the Motion of J.R. Buffington to Avoid Judicial Lien Pursuant to 11 U.S.C. § 522(f). The parties agree that the identity of legal issues present in both motions requires that these motions be considered together. This opinion constitutes findings of fact and conclusions of law, as to both matters, in accordance with Fed.R.Bankr.P. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

J.R. Buffington ("Debtor") filed for relief under chapter 7 of the Code on August 10, 1993. Prior to filing for relief, Debtor was married to Carolyn Sue Buffington ("Creditor"). During their marriage, the Buffington's acquired a residential homestead. It is undisputed that this property was the community property of the parties prior to the divorce which terminated their marriage.

At issue in this proceeding is the effect in bankruptcy of the actions taken in Texas state court which affect the homestead. Through the divorce decree Debtor was awarded, inter alia, the homestead and ordered to be the primary obligor on all preexisting indebtedness encumbering the homestead. Creditor, in return for relinquishing her interest in certain classes of community property, including the homestead, was awarded, inter alia, a judgment in the amount of five thousand ($5,000.00) dollars secured by an equitable lien against the homestead. This judgment was to accrue interest at the rate of 10% and be paid in monthly installments of Two Hundred ($200.00) Dollars each. Although announced in open court on December 18, 1992, the final

decree of divorce was not ministerially signed and ratified by the trial judge until April 16, 1993. In the interim, in order to formalize the court's oral ruling, the parties executed the following documents: real estate lien note; special warranty deed; and, a deed of trust. The net effect of these transactions was to convey Creditor's ownership interest in the former matrimonial homestead to Debtor in return for which Creditor received a $5,000.00 note secured by a deed of trust on the homestead.

On November 17, 1993, Debtor filed a Motion to Avoid Lien Pursuant to 11 U.S.C. Section 522(f)[1]. Debtor asserts that the lien awarded pursuant to the divorce decree is a judicial lien subject to avoidance because it impairs his interest in an exemption, namely the homestead. Subsequently, Creditor filed a Motion for Relief from the Automatic Stay on October 6, 1993. After a preliminary hearing the motion for relief was set for final hearing on December 14, 1993. In pertinent part, the motion for relief argues that the automatic stay should be lifted for Debtor's failure to make payments under the terms of the note secured by the deed of trust and that Creditor's interest is not adequately protected. See generally 11 U.S.C. §§ 361, 362(d). While not disputing the allegation of nonpayment Debtor maintains that Creditor's lien is invalid and relief from the automatic stay is not appropriate.

Creditor argues that the 1991 decision of the Supreme Court in Farrey v. Sanderfoot, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 is dispositive in this case. In Farrey, the facts closely approximate those currently present. Farrey and Sanderfoot were divorced. Under Wisconsin law, a presumption existed that the marital estate was to be divided equally between the parties. In order to equalize the division of the estate given the award of the homestead to Sanderfoot the state court granted Farrey a judgment in the amount of approximately $29,000.00 secured by a lien against the property. Sanderfoot never paid the judgment and la-

---

1. (f) ........ the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien....
11 U.S.C. § 522(f)(1).

ter filed bankruptcy. Sanderfoot claimed the homestead as exempt and attempted to avoid Farrey's lien pursuant to § 522(f). The bankruptcy court's refusal to grant Sanderfoot's request was reversed by the district court. The district court decision was affirmed by a divided panel of the seventh circuit court of appeals. The Supreme Court reversed.

Looking first at the language of the statute the Supreme Court determined that lien avoidance under § 522(f) was only applicable when the lien sought to be avoided was "fixed" on the property after the debtor acquired an interest in it. 500 U.S. at 296, 111 S.Ct. at 1829. Applying the parties' agreed characterization of Wisconsin law the Supreme Court determined that the process of divorce extinguished the previous interests held by the parties in the homestead. The new interest granted to Sanderfoot i.e. a new fee simple interest in the homestead, was encumbered by Farrey's lien. Since both interests arose at the same time § 522(f) was not applicable because Sanderfoot never possessed his new fee simple interest before the lien "fixed." 500 U.S. at 299, 111 S.Ct. at 1831. Alternatively, the Supreme Court held that if the process of divorce merely reordered the parties' interests the result would be the same. In application this would involve viewing the transaction as if both Farrey and Sanderfoot each possessed an interest in the property just prior to the divorce. Rather than extinguishing both parties' interests the divorce and resulting property division merely augmented Sanderfoot's interest by addition of Farrey's interest in the property. Since the lien in favor of Farrey attached to her interest contemporaneously with the transfer of this interest to Sanderfoot, Sanderfoot never possessed an interest in the interest transferred by Farrey prior to the "fixing" of the lien. 500 U.S. at 299, 111 S.Ct. at 1831. The Debtor argues that *Farrey* would have been decided differently under Texas law. The matter was taken under advisement.

## DISCUSSION OF LAW

It is a well settled proposition that in determining rights in property, a bankruptcy court must look to applicable state law. Fortunately, the primary issues in dispute between the parties, i.e. the validity of the equitable lien and its effect, have been addressed by the Texas supreme court in *McGoodwin v. McGoodwin*, 671 S.W.2d 880 (Tex.1984). In *McGoodwin*, James and Patsy McGoodwin acquired a community homestead during marriage. The parties subsequently divorced. In the resulting property settlement agreement James was awarded the property. In consideration for conveying her one-half interest in the homestead to James, James agreed to pay Patsy the sum of $22,500.00 plus interest over a set period of time. James failed to pay. Patsy, claiming an implied vendor's lien arose as a result of the property settlement agreement, attempted to foreclose. James defended on the basis that as his homestead the property was excepted from forced sale.

Looking first to earlier precedent the supreme court concluded "that when no express lien is reserved in a deed and the purchase money is not paid, a lien nevertheless arises by implication in favor of the vendor to secure payment of the purchase money." *Id.* at 882. Applying that principle to the facts of the case, the supreme court found that because the consideration for the sale of Patsy's one-half interest in the homestead was not paid at the time of the divorce decree a purchase money vendor's lien arose to secure the interest conveyed and that this interest was superior to James' claim of homestead.[2] *Id.; Bowden v. Knowlton*, 734 S.W.2d 206, 208 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Colquette v. Forbes*, 680 S.W.2d 536, 538 (Tex.App.—Austin [3rd Dist.] 1984, no writ); *Lettieri v. Lettieri*, 654 S.W.2d 554 (Tex.App.—Fort Worth [2nd Dist.] 1983, writ dism'd).

▇ In this case, both Creditor and Debtor possessed a one-half community interest in the homestead at the time of the dissolution of their marriage. *See In re Worth*, 100

---

**2.** The Texas constitution prohibits the attachment of a lien against homestead property unless it is the result of purchase money, taxes, or a validly executed mechanic's lien. Tex. Const. Art. 16, § 50 (Vernon 1993).

B.R. 834, 840 (Bankr.N.D.Tex.1989) (Recognizing that under Texas law community property is owned one-half by the husband and one-half by the wife). Pursuant to the divorce decree and related documents of conveyance Creditor conveyed this one-half interest to Debtor for a sum certain. Unlike *McGoodwin,* documents evidenced both the conveyance and the resulting lien. Debtor's absolute interest in the entirety of the homestead was thus obtained subject to Creditor's lien. Because Debtor's unitary interest in the homestead was not established before Creditor's lien was "fixed" *Farrey* is dispositive.[3] (On the theory of the reordering of interests in property). Debtor's Motion to Avoid Lien Pursuant to § 522(f) must be DENIED.[4] *See In re Finch,* 130 B.R. 753, 757 (S.D.Tex.1991) (Reaching the same result but analyzing the issue from the perspective of extinguishing preexisting interests).

■ Although this Court has found Creditor's lien to be valid, the relief sought through Creditor's Motion for Relief from Automatic Stay is problematic. Through this motion Creditor seeks relief from this Court to commence state law foreclosure proceedings against Debtor's homestead. Such relief is not only overbroad but beyond the power of this Court to order. Through the divorce decree and documents of conveyance Creditor transferred her one-half interest in the homestead to Debtor. Although the deed of trust is couched in terms of granting Creditor a lien against the entirety of the property of Debtor, it is clear to this Court that Debtor was already vested with his one-half interest in the homestead which could not become subject to Creditor's lien. The only portion of the property in question to which the lien attached is the undivided one-half interest conveyed by Creditor in the divorce action. The conveyance of the one-half interest and the granting of the lien were simultaneous. Therefore, lien avoidance is not applicable under *Farrey* since both interests arose at the same time. *See McGoodwin,* 671 S.W.2d at 882; *Worth,* 100 B.R. at 840; *In re Miller,* 58 B.R. 192, 201 (Bankr.S.D.Tex.1985). Creditor's security interest extends only to the one-half undivided interest in the former homestead which she transferred to Debtor. That security interest is not subject to avoidance and Creditor is entitled to be paid under the promissory note or to have the automatic stay modified to allow her to proceed to foreclose her remedies against the one-half interest in the former matrimonial homestead under state law.

The Court finds that it is compelled to grant the Motion for Lien Avoidance as to the one-half interest in the homestead property that was vested in Debtor prior to the divorce which terminated the marriage be-

---

3. As in *Farrey,* whether the lien at issue in this case is properly characterized as a judicial lien has not been addressed by the parties. *Farrey,* 500 U.S. at 293, 111 S.Ct. at 1828. The Code defines "judicial lien" as "[a] lien obtained by judgment, levy, sequestration, or other legal or equitable process." 11 U.S.C. § 101(36). Therefore, an equitable lien can be a judicial lien. But is the lien in this case more a judicial lien than a purchase money lien? The *McGoodwin* case would seem to opt for the latter course as would the facts of this case where the parties stipulated to the conveyance of the homestead property in the divorce decree. (Pl.Ex. 1, p. 2) *compare In re Worth,* 100 B.R. 834, 835 n. 3 (Bankr.N.D.Tex. 1989) (Involuntary nature of judicially mandated division and reconveyance between the parties subject to a lien of community homestead property classified as a judicial lien.). The significance of this characterization is that recourse to § 522(f) could be foreclosed if the lien were purchase money. Of course, the parties' treatment of this lien as a judicial lien combined with the finding by this Court that Creditor's lien attached prior to Debtor obtaining an unfettered interest in this property renders such considerations academic.

4. The Court finds Debtor's reliance on a line of cases exemplified by *Heggen v. Pemelton,* 836 S.W.2d 145 (Tex.1992) to be inapposite. The facts in *Heggen* involved the status of an equitable lien imposed against one spouse's *separate* real property homestead to secure the nonpossessory spouse's right of reimbursement for improvements to the property during the marriage. The Texas supreme court found, under the facts, that such an equitable lien impermissibly encumbered the possessory spouse's homestead rights. In that *Heggen* involved the status of an equitable lien against a preexisting precommunity property interest its holding is irrelevant to the issue before this Court. Furthermore, it should be noted that the Fifth Circuit has recently addressed this type of issue and its relationship to § 522(f) in *In re Parrish,* 7 F.3d 76, 77 (5th Cir.1993). In *Parrish,* the court held, under facts similar to *Heggen,* that such liens are avoidable under § 522(f).

tween the parties. As to the one-half interest Debtor acquired from Creditor in the divorce proceedings, the Court must deny the Motion for Lien Avoidance and further grant Creditor relief from the automatic stay to the extent that she seeks to foreclose her one-half interest in that property.