In re Patricia M. KUEHNERT, Debtor.

Patricia M. Kuehnert, Movant,

v.

Arthur Chamberlain and Patricia Chamberlain, Respondents.

No. 01–31444.

United States Bankruptcy Court, D. Connecticut.

Aug. 16, 2001.

Murray J. Kessler, New Milford, CT, for Debtor.

Peter V. Spagunolo, for Movant.

Richard Belford, trustee.

## MEMORANDUM OF DECISION AND ORDER ON MOTION TO AVOID JUDICIAL LIEN

ALBERT S. DABROWSKI, Bankruptcy Judge.

On August 15, 2001, the Debtor's *Motion to Avoid and Discharge Judicial Lien* (hereafter, the "Motion"), Doc. I.D. No. 4, and *Respondents Objection to Movant's Motion to Avoid and Discharge a Judicial Lien* (hereafter, the "Objection"), Doc. I.D. No. 11, came on for a hearing after due notice.

*FACTUAL BACKGROUND*

The parties argued this matter on the following undisputed facts. On or about December 12, 1989, Patricia M. Kuehnert (hereafter, the "Debtor") and her then spouse (hereafter, "Former Spouse") purchased real property known as and numbered 11 Chimney Rock Road, Kent, Connecticut (hereafter, the "Property") as joint tenants. On January 17, 1991, Arthur and Patricia Chamberlain (hereafter, the "Respondents")—creditors of the Debtor and her Former Spouse—recorded on the Kent, Connecticut Land Records a Notice of Attachment against the Property. On February 7, 1991, the Connecticut Superior Court entered a Divorce Judgment dissolving the Debtor and her Former Spouse's marriage, and providing, *inter alia,* that "pursuant to Conn. Gen Stat. Section 46b–81, the court transfers title [to the Property] to the Plaintiff, Patricia M. Kuehnert, subject to the first mortgage thereon." [1] On June 24, 1991 the Respondents obtained a monetary judgment against the Debtor and her Former Spouse (hereafter, "Judgment"), and on June 28, 1991, caused a judgment lien (hereafter, the "Judgment Lien") to be filed against the Property. Pursuant to C.G.S. § 52–380a(b), the Judgment Lien relates back to, and is deemed effective as of, January 17, 1991.

*DISCUSSION*

A debtor may not use Section 522(f)(1)(A) as an instrument of judicial lien avoidance unless the debtor held the subject property interest prior to the attachment, or "fixing", of the subject lien to that interest. *See Farrey v. Sanderfoot,* 500 U.S. 291, 296, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). The Respondents ar-

1. On or about February 21, 1991, the Debtor's former spouse executed a quitclaim deed transferring his interest in the Property to the Debtor (hereafter, the "Quitclaim").

gue that the Debtor obtained a "completely new fee interest" in the Property, through the Divorce Judgment and/or the Quitclaim, in February, 1991, *after* the January, 1991 attachment of the Judgment Lien. Alternatively, and in the event this Court were to determine the transfer of the Former Spouse's interest in the Property did not create a "completely new fee interest" in the Debtor, the Respondents argue the Debtor may avoid only 1/2 the Judgment Lien since at the very least, they state, she may not avoid the Judgment Lien as to the Former Spouse's interest transferred to her, as "she acquired that 1/2 interest after it had already been encumbered" by the Judgment Lien. This Court finds neither of the alternative arguments of the Respondents persuasive under the facts of this matter.

As a joint tenant, the Debtor enjoyed an *undivided* interest in the Property *as a whole* at the time the Judgment Lien became fixed. Following the Divorce Judgment and/or Quitclaim the Debtor still possessed an undivided interest in the entire Property. The effect of the Divorce Judgment and/or Quitclaim was not to create in her a *new* interest in the Property, or even to extend her interest to *more* of the Property. Rather, the real effect of the Divorce Judgment and/or Quitclaim was to increase her percentage interest in the *value* of the Property—from 50% to 100%. Accordingly, because the Judgment Lien fixed upon the entire Property interest which the Debtor now holds, and in view of the satisfaction of all other requirements of Section 522(f),[2] the Judgment Lien is avoidable by the Debtor in full.

This Court's legal conclusions also comport with equity under the circumstances of this case. If the Debtor and her Former Spouse had not divorced, and then become bankruptcy debtors, there could be no question that the full amount of the Judgment Lien would be subject to avoidance. Since the Former Spouse has been divested of any interest in the Property—and thus is without standing to avoid any portion of the Judgment Lien not avoidable by the Debtor here—denying full lien avoidance to the Debtor would create a windfall in favor of the Respondents simply by virtue of the Debtor's divorce. Such a result is contrary to equity and the public interest.

### CONCLUSION AND ORDER

For the foregoing reasons the Objection is **OVERRULED**, and the Motion is **GRANTED** in that the fixing of the judicial lien of the Respondents on the Property may be **AVOIDED** pursuant to Section 522(f). On or before August 27, 2001, the parties shall settle an order consistent with this Memorandum of Decision and in substantial compliance with this Court's Section 522(f) Form Order.

---

2. The Court received no quantitative evidence from either party on the variables used to calculate impairment under Section 522(f)(2). The parties presented their cases in a manner which presumed the avoidability of the Judgment Lien to the extent of this Court's conclusion as to the extent of the Debtor's interest in the Property at the time the Judgment Lien fixed thereon.