KEARSE, Circuit Judge:
 

 This appeal turns on whether New York law, under which an unsatisfied money judgment automatically becomes a hen on real
 
 *339
 
 property thereafter acquired by the judgment debtor in the county in which the judgment has been docketed,
 
 see, e.g., Hulbert v. Hulbert,
 
 216 N.Y. 430, 111 N.E. 70 (1916) (“Hulbert”); N.Y.C.P.L.R. 5203 Practice Commentaries, leaves a temporal interval between the acquisition of the property and the attachment of the lien. Marine Midland Bank (“Marine Midland” or the “Bank”) appeals from a judgment of the United States District Court for the Western District of New York, Michael A. Telesea,
 
 Judge,
 
 affirming an order of the Bankruptcy Court for the Western District of New York that granted the motion of debtor Mark Scarpino pursuant to 11 U.S.C. § 522(f) (1994) to avoid the Bank’s judgment lien on certain real property he acquired after the Bank had docketed its judgment. Both courts ruled that, under New York law, after Scarpino acquired the property there was an interval before the Bank’s judgment lien attached, thereby permitting Scarpino to avoid attachment of the lien. On appeal, Marine Midland challenges that ruling, contending that, with respect to an interest in real property acquired by a judgment debtor after the judgment has been docketed, the judgment lien created by New York law attaches to that interest simultaneously with the debtor’s acquisition of the interest. We agree, and we therefore reverse.
 

 I. BACKGROUND
 

 In 1990, Marine Midland obtained a judgment against Scarpino in New York State Supreme Court in the amount of $16,378.56. The judgment was docketed in the office of the Monroe County Clerk on December 11, 1990, and was never satisfied. In 1994, after obtaining a mortgage in the amount of $86,-540, Scarpino purchased a parcel of real property in Monroe County. In October 1995, he petitioned for bankruptcy under Chapter 7,
 
 see
 
 11 U.S.C. §§ 701-766 (1994), of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (1994) (the “Code”).
 

 To the extent pertinent to this appeal, New York law provides a judgment debtor with a homestead exemption to the extent of $10,-000,
 
 see
 
 N.Y.C.P.L.R. 5206(a) (McKinney 1978), and the Code allows a debtor to “avoid the fixing of’ a judgment lien to the extent that the lien would impair an exemption to which the debtor would otherwise be entitled, 11 U.S.C. § 522(f). In papers filed with his bankruptcy petition, Scarpino listed his Monroe County real property as an asset valued at $86,500; pursuant to 11 U.S.C. § 522(b)(2)(A), he claimed the $10,000 homestead exemption. Shortly thereafter, he moved in the bankruptcy court pursuant to § 522(f) to avoid Marine Midland’s judgment lien on the property.
 

 Marine Midland opposed Scarpino’s motion. Though it acknowledged that the sum of its lien ($16,378.56), the mortgage balance ($86,061.60), and the amount of the exemption ($10,000) exceeded the value of the property ($86,500), it argued that § 522(f), as interpreted by the Supreme Court in
 
 Farrey v. Sanderfoot,
 
 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), does not allow a debtor to avoid a lien unless the lien attached sometime after the debtor acquired the property. Relying on the New York Court of Appeals decision in
 
 Hulbert,
 
 in which the court stated that a judgment lien attaches “to the interest of [the judgment debtor] upon his acquiring title to that interest,” 216 N.Y. at 433, 111 N.E. 70, the Bank argued that its lien attached simultaneously with Searpino’s acquisition of the property, not afterwards, and hence could not be avoided pursuant to § 522(f).
 

 The bankruptcy court, in a Decision and Order dated May 23, 1996 (“Bankruptcy Court Opinion”), granted Searpino’s motion to avoid the Bank’s lien. While accepting the Bank’s premise that
 
 Farrey v. Sanderfoot
 
 means that a debtor cannot under § 522(f) avoid a judgment lien that attached to exempt property simultaneously with the property’s acquisition, the court rejected Marine Midland’s interpretation of state law. It distinguished
 
 Hulbert
 
 on the ground that that case did not directly involve the question of the time at which a judgment lien attaches but only the question of which of several judgment creditors’ liens had priority.
 
 See
 
 Bankruptcy Court Opinion at 5-7. The bankruptcy court viewed the question of the time at which a judgment lien attaches to the debtor’s later-acquired property as “a matter
 
 *340
 
 of first impression,”
 
 id.
 
 at 4, and it resolved the question in favor of Scarpino, stating that “logic and common sense would dictate that an interest would first have to be acquired before any other right, title or interest could be acquired in it or attach to it, including the attachment of a lien of a prior judgment.”
 
 Id.
 
 at 7. The bankruptcy court inferred support for its conclusion from the language of another New York decision,
 
 In re Hazard’s Estate, 25
 
 N.Y.S. 928 (Sup.Ct.1893),
 
 aff'd,
 
 141 N.Y. 586, 36 N.E. 739 (1894), that “until title is acquired it seems to be clear that no lien can attach,”
 
 id.
 
 at 931.
 
 See
 
 Bankruptcy Court Opinion at 6-7.
 

 The district court affirmed, agreeing with the bankruptcy court that
 
 Hulbert
 
 was distinguishable on the ground that it “addressed the issue of hen priority, not the question of precisely when the hens attached to the after-acquired property interest,” Decision and Order dated August 13, 1996, at 3. Stating that “[conceptually, there could be no attachment of the pre-existing hen until the property was first transferred to the debtor,”
 
 id.,
 
 the district court ruled that the Bank’s hen did not attach until sometime after Searpino owned the property and that he was therefore entitled to avoid the hen pursuant to § 522(f).
 

 This appeal fohowed.
 

 II. DISCUSSION
 

 A bankruptcy estate generahy comprises ah property in which a debtor has an interest at the time the petition is filed.
 
 See
 
 11 U.S.C. § 541. Section 522(b) of the Code, however, ahows the debtor in a liquidation case to exempt from the estate certain property that would otherwise be liquidated and distributed to creditors. The effect of exemption is to immunize the exempt property from seizure or attachment for satisfaction of debts incurred prior to the bankruptcy proceeding.
 
 See id.
 
 § 522(c) (exempt property generahy “is not hable during or after the case for any debt of the debtor that arose ... before the commencement of the [bankruptcy] case”). The purpose of allowing such exemptions is to help ensure that “a debtor that [sic] goes through bankruptcy comes out with adequate possessions to begin his fresh start.” H.R.Rep. No. 95-595, at 126 (1977),
 
 reprinted in,
 
 1978 U.S.C.C.A.N. 5963, 6087.
 

 Section 522(e), however, provides no such immunization with respect to any of the debtor’s liabilities that were secured by hens on the exempt property, unless those hens are avoided during the bankruptcy case under certain sections of the Code, including § 522(f).
 
 See
 
 11 U.S.C. § 522(c)(2);
 
 Johnson v. Home State Bank,
 
 501 U.S. 78, 82-84, 111 S.Ct. 2150, 2153-54, 115 L.Ed.2d 66 (1991) (unavoided hens survive bankruptcy, and henholders may, pursuant to apphcable state-law procedure, enforce them against the debtor’s property after the bankruptcy case is closed);
 
 Farrey v. Sanderfoot,
 
 500 U.S. at 297, 111 S.Ct. at 1829; S.Rep. No. 95-989, at 76 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 5862. Section 522(f) provides, to the extent pertinent here, that
 

 the debtor may avoid the fixing of a hen on an interest of the debtor in property to the extent that such hen impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such hen is—
 

 (A) a judicial hen ...
 

 11 U.S.C. § 522(f)(1)(A), and it defines “impair[ment]” as the amount by which the sum of (a) the hen whose avoidance is sought, (b) ah other hens, and (c) the amount of the exemption “exceeds the value that the debt- or’s interest in the property would have in the absence of any hens,”
 
 id.
 
 § (f)(2)(A). The purpose of allowing avoidance of such hens is to “protect[ ] the debtor’s exemptions, his discharge, and thus his fresh start.” S.Rep. No. 95-989, at 76,
 
 reprinted in
 
 1978 U.S.C.C.A.N. at 5862.
 

 In
 
 Farrey v. Sanderfoot,
 
 the Supreme Court reasoned that, by referring to the “fixing” of the hen, § 522(f) contemplates a property interest that existed before the hen attached, and the Court concluded that if the creation of the interest and the creation of the hen are simultaneous, there can be no avoidance of the hen under that section:
 

 The statute does not say that the debtor may undo a hen on an interest in property. Rather, the statute expressly states that
 
 *341
 
 the debtor may avoid “the fixing” of a lien on the debtor’s interest in property.
 
 The gerund “fixing” refers to a temporal event. That event
 
 — the
 
 fastening of a
 
 liability—
 
 presupposes an object onto which the liability can fasten.
 
 The statute defines this pre-existing object as “an interest of the debtor in property.” Therefore, unless the debtor had the property interest to which the lien attached at some point
 
 before
 
 the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1).
 

 500 U.S. at 296, 111 S.Ct. at 1829 (first emphasis added; second emphasis in original). The Court stated that “the critical inquiry remains whether the debtor ever possessed the interest to which the lien fixed, before it fixed.”
 
 Id.
 
 at 299, 111 S.Ct. at 1830 In the case before it, the
 
 Farrey
 
 Court held that the debtor was not entitled under § 522(f) to avoid a judicial lien on homestead property awarded to him under a divorce decree because that lien, which was created by the same decree, attached to the property simultaneously with the debtor’s acquisition of the property.
 
 See id.
 
 at 299-300, 111 S.Ct. at 1830-31.
 

 The question before this Court, therefore, is whether, under New York law, a judgment lien attaches at the moment of the debtor’s postjudgment acquisition of real property or sometime thereafter. We conclude that the lien attaches at the moment of acquisition.
 

 Since at least 1813, New York has provided by statute for a lien that automatically attaches to a judgment debtor’s real property if the judgment is docketed in the county in which the property is located.
 
 See, e.g., Hulbert,
 
 216 N.Y. at 440, 111 N.E. 70; N.Y.C.P.L.R. 5203 (McKinney 1978). As to a properly docketed judgment, the present provision states that, for a 10-year period, “[n]o transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor____” N.Y.C.P.L.R. 5203. As we read this provision, there cannot be an interval between the debtor’s postjudgment acquisition of an interest and the fixing of the lien arising from a previously docketed judgment, for if there were, the debtor would logically be able to transfer his interest in that interval, defeating the lien of the judgment creditor. Since, as § 5203 indicates, the debtor would not be allowed to thus defeat the judgment creditor’s interest, we conclude that there is no interval in which the lien has not attached. We need not rely on our own interpretation of the statute to reach this conclusion, however, for unlike the bankruptcy court, we do not view this case as presenting a question of first impression.
 

 For many decades, the New York Court of Appeals, interpreting predecessors of § 5203, has construed New York law to mean (a) that the lien attaches “from the moment a judgment is duly filed and docketed,”
 
 Hulbert,
 
 216 N.Y. at 440, 111 N.E. 70, and (b) that the lien extends not only to real property the debtor owned at the time the judgment was docketed, but also to any real property acquired by him thereafter,
 
 see, e.g., id
 
 at 433, 111 N.E. 70;
 
 In re Hazard’s Estate,
 
 25 N.Y.S. 928, 930 (Sup.Ct.1893)
 
 (“Hazard’s Estate”)
 
 (citing N.Y.C.C.P. § 1251, which provided that a properly docketed judgment, for a period of 10 years, “binds, and is a charge upon ... the real property ... in that county, which the judgment debtor has at the time of so docketing it,
 
 or which he acquires at any time afterwards
 
 ” (emphasis added)),
 
 aff'd,
 
 141 N.Y. 586, 36 N.E. 739 (1894). As to such after-acquired property, the New York Court of Appeals in
 
 Hulbert
 
 stated that it was the “settled rule” that a judgment lien on the judgment debtor’s property interest attaches
 
 “at the time
 
 of its acquisition by the debtor,”
 
 i. e., “upon
 
 [the debtor’s] acquiring title to that interest.” 216 N.Y. at 433, 111 N.E. 70 (emphases added).
 
 See also In re Luftman,
 
 245 F.Supp. 723, 725 (S.D.N.Y.1965) (Feinberg, J.) (judgment lien attaches to subsequently acquired property at “the moment the debtor obtains the realty”). Although the precise question before the
 
 Hulbert
 
 court was which of several judgment liens, if any, had priority -with respect to property that the debtor inherited after the judgments were docketed, we see no basis for disregarding that court’s clear and repeated view that the docketed judgments became liens on the after-acquired property
 
 *342
 
 of the judgment debtor: “at the time of its acquisition by the debtor,” 216 N.Y. at 433, 111 N.E. 70; “when [the debtor] acquired the property,”
 
 id.
 
 at 441, 111 N.E. 70; “upon his acquisition of the interest,”
 
 id.
 
 at 440, 111 N.E. 70; “upon his acquiring title to that interest,”
 
 id.
 
 at 433, 111 N.E. 70.
 

 The district and bankruptcy courts in the present case relied on
 
 Hazard’s Estate
 
 for the proposition that the lien arises not upon the judgment debtor’s acquisition of the interest but sometime thereafter. That reading of the New York Supreme Court’s opinion in
 
 Hazard’s Estate
 
 is not warranted, and indeed is contrary to the interpretation given
 
 Hazard’s Estate
 
 by the New York Court of Appeals. The
 
 Hazard’s Estate
 
 opinion merely emphasized the obvious: that a lien cannot attach to a person’s interest in property before the interest is created.
 
 See
 
 25 N.Y.S. at 931 (“until title is acquired it seems to be clear that no lien can attach”). But the court did not indicate that it equated “not before,”
 
 id.,
 
 with after, for it stated that the lien arises
 
 “when
 
 the debtor acquires the property,”
 
 id.
 
 at 930 (emphasis added). Noting the statutory language that a judgment lien “‘shall bind the lands’” acquired by the judgment debtor “ ‘at any time thereafter,’ ” the
 
 Hazard’s Estate
 
 court asked “Bind when?
 
 Clearly when acquired,
 
 and not before.”
 
 Id.
 
 at 930-31. Thus, the
 
 Hulbert
 
 court, which had affirmed in
 
 Hazard’s Estate
 
 on the basis of the Supreme Court’s opinion, cited
 
 Hazard’s Estate
 
 for “the settled rule” that judgments become liens on an after-acquired property interest of the judgment debtor at the time the debtor acquires his interest.
 
 Hulbert,
 
 216 N.Y. at 433, 111 N.E. 70.
 

 Given New York’s “settled rule,” we conclude that Marine Midland’s judgment lien attached to Searpino’s Monroe County property simultaneously with his acquisition of the property. Accordingly, the lien is not avoidable pursuant to § 522(f).
 

 CONCLUSION
 

 We have considered all of Searpino’s arguments in favor of affirmance and have found them to be without merit. The judgment of the district court is reversed, and the order of the bankruptcy court avoiding the lien vacated.