**In re Sheila Ann PEDERSON, Debtor.**

**Bankruptcy No. 97–43754 TG.**

United States Bankruptcy Court,
N.D. California.

Dec. 1, 1997.

David A. Smyth, Los Angeles, CA, for Debtor.

Randall Lawrence Weeks, Denver, CO, Pro Se.

## MEMORANDUM RE MOTION TO AVOID JUDICIAL LIEN

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

The debtor moves to avoid a judicial lien pursuant to 11 U.S.C. § 522(f)(1) on the ground that it impairs her homestead exemption. The lienholder contends that the debtor is not entitled to avoid its lien because the judgment lien attached to the homestead at the same instant the debtor acquired it. The parties agree that, if the motion to avoid the lien is granted, the debtor's plan should be confirmed. On the other hand, if the motion is denied, the debtor will be unable to propose a feasible plan, and the case should be dismissed. For the reasons stated below, the Court grants the motion and confirms the plan.

## FACTS

On January 14, 1993, Randall Lawrence Weeks ("Weeks") obtained a judgment against the debtor. On February 26, 1993, he recorded an abstract of judgment in the Contra Costa County Recorder's Office. At that time, the debtor did not own the real property that she now claims as her homestead (the "Property"). On March 17, 1994, the debtor acquired the Property.

Sometime in late 1996, the debtor filed a petition seeking relief under chapter 7 of the Bankruptcy Code. The debtor received a discharge on March 30, 1997. As a result, she discharged her personal liability to Weeks pursuant to the judgment. On April 21, 1997, the debtor filed her petition commencing this chapter 13 case. The debtor's plan presumes that she will be able to avoid Weeks' lien pursuant to 11 U.S.C. § 522(f)(1) and will not be required to pay his claim. If Weeks' lien is not avoided, she will be required to pay his claim in full with interest. This would require her to increase her monthly payments to the standing trustee by a substantial amount. The trustee has indicated that this is not feasible.

## DISCUSSION

Section 522(f)(1) states, in pertinent part, that:

... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien. ...

11 U.S.C.A. § 522(f)(1) (West Supp.1997). Weeks contends that a debtor may not avoid his judicial lien under § 522(f)(1) because it was created by the recordation of an abstract of judgment before the debtor acquired the Property. As a result, the lien attached to the Property at the precise moment the debtor acquired it. Weeks contends that the word "fixing," as used in § 522(f)(1), refers to the attachment of a lien to a preexisting

interest, not one acquired simultaneously with the attachment of the lien. In support of this contention, Weeks cites *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

In *Sanderfoot,* a chapter 7 debtor moved to avoid a judicial lien issued in favor of the debtor's former spouse as part of a divorce decree. The same decree awarded the debtor sole ownership of the marital home. The divorce decree extinguished the parties' prior interest in the home and created a new interest in the debtor's favor. The Supreme Court held that a chapter 7 debtor could not use § 522(f)(1) to avoid a judicial lien under these circumstances. It stated its reasoning as follows:

> The statute does not say that the debtor may undo a lien on an interest in property. Rather, the statute expressly states that the debtor may avoid "the fixing" of a lien on the debtor's interest in property. The gerund "fixing" refers to a temporal event. That event—the fastening of a liability-presupposes an object onto which the liability can fasten. The statute defines this preexisting object as "an interest of the debtor in property." Therefore, unless the debtor had the property interest to which the lien attached at some point before the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1).

*Farrey v. Sanderfoot,* 500 U.S. at 296, 111 S.Ct. at 1828–29.

Weeks also relies on *In re Scarpino,* 113 F.3d 338 (2d Cir.1997). The facts of *Scarpino* are similar to those presented here. In 1990, a creditor obtained a money judgment against Scarpino in the New York. The judgment was "docketed" in Monroe County, New York. In 1994, Scarpino purchased a parcel of real property in Monroe County.

In 1995, he filed a chapter 7 bankruptcy case, claimed the real property as his homestead, and filed a motion to avoid the creditor's judicial lien under 11 U.S.C. § 522(f)(1)(A).

The creditor in *Scarpino* made the same argument Weeks makes here, relying, like Weeks, on *Sanderfoot.* The *Scarpino* court viewed the issue as whether, under New York law, a judgment lien attaches to after-acquired real property at the instant the debtor acquires the property interest or whether it attaches sometime thereafter. The court concluded that the lien attached at the same instant.

The *Scarpino* court based its conclusion, in part, on a New York state statute that provides that a judgment debtor's transfer of real property subject to a judgment lien is not effective as to the judgment creditor. From this, the court concluded that there could be no temporal interval between the time the debtor acquires a real property interest and the time the judgment lien attaches. If there were, the debtor would be able to transfer the real property away before the lien attached. The *Scarpino* court also cited language contained in several cases decided by New York state courts supporting its conclusion that, under New York law, a judgment lien attaches to after-acquired real property at the moment the debtor obtains the realty. *Scarpino,* 113 F.3d at 341.[1]

Weeks contends that, like New York law, California law provides that a judgment lien attaches to after-acquired property at the same moment that the debtor acquires the property. In support of this proposition, Weeks cites C.C.P. § 697.340(b) which provides as follows:

> If any interest in real property in the county on which a judgment lien could be created under subdivision (a) is acquired

---

**1.** Weeks also relies *In re Owen,* 961 F.2d 170 (11th Cir.1992) in support of his position. This reliance appears misplaced. In *Owen,* a creditor obtained a judgment and recorded it in Sarasota County, Florida. Thereafter, the debtor purchased a condominium in Sarasota County. At that time, Florida law did not permit the debtor to claim a homestead exemption in the condominium. A year after she acquired the condominium, Florida law changed to permit the exemption. The Eleventh Circuit properly refused

to permit the debtor to avoid the judgment lien in her subsequent bankruptcy pursuant to 11 U.S.C. § 522(f)(1). It viewed the judgment lien as comparable to a judgment lien entered against a former owner of the real property that attached to the property before the debtor acquired it. The Supreme Court in *Sanderfoot* specifically noted that a debtor could not use § 522(f)(1) to avoid such a lien. *Farrey v. Sanderfoot,* 500 U.S. at 298–99, 111 S.Ct. at 1829–30.

after the judgment lien was created, the judgment lien attaches to such interest **at the time it is acquired.**

Cal.Civ.Proc.Code § 697.340 (West 1987) (emphasis added). Weeks cites no cases decided by California courts construing this provision. The Court has also been unable to discover any such cases.

The only case that the Court has discovered construing C.C.P. § 697.340(b) is a bankruptcy court decision—*In re Thomas*, 102 B.R. 199 (Bankr.E.D.Cal.1989). In *Thomas*, the issue presented was whether a judgment lien could attach to real property **before** the debtor acquired it. The bankruptcy court wisely concluded that it could not. It based this conclusion on the definition of "lien" in C.C.P. § 1180 as "a charge imposed upon specific property...." *Thomas*, 102 B.R. at 200, n. 3 (emphasis omitted). Thus, until the debtor acquired the specific property, there could be no lien.[2]

■■■ The correct resolution of the issue presented here—i.e., whether a previously recorded judgment lien attaches to subsequently acquired real property **at the precise moment** the property is acquired or **at the very next moment**—is less obvious. The Court is not aware of any reported decision addressing this issue in the context of C.C.P. § 697.340(b). The Court therefore views the issue as one of first impression. Consistent with the rationale of *Thomas*, the Court construes the phrase to have the latter meaning. It seems more natural to presume that, first, one acquires property, and then, a lien attaches. The language of the statute may reasonably be interpreted as meaning only that the sequence of events is so rapid that no other event may intervene.

Moreover, the Court believes that the *Scarpino* court misreads *Sanderfoot* as focusing solely on the temporal order of events. It does this by isolating the word "simultaneously," as used in *Sanderfoot*, from the

context in which the word appears. The relevant discussion is as follows:

> The same decree that awarded Sanderfoot his fee simple interest simultaneously granted the lien to Farrey.... Sanderfoot took the interest and the lien together, as if he had purchased an already encumbered estate from a third party. Since Sanderfoot never possessed his new fee simple interest before the lien "fixed," § 522(f)(1) is not available to void the lien.

*Farrey v. Sanderfoot*, 500 U.S. 291, 299–300, 111 S.Ct. 1825, 1830–31, 114 L.Ed.2d 337. The Court reads this passage to mean that § 522(f)(1) may not be used to avoid a judgment lien that is created as part and parcel of the creation of the interest that it encumbers. Thus, a state legislature may not immunize judgment liens that have no logical connection with the interest acquired from avoidance under § 522(f)(1) by enacting statutes that state that a judgment lien is deemed to attach to the judgment debtor's real property simultaneously with the debtor's acquisition of the property interest.

The Court also believes that the *Scarpino* court used faulty reasoning in construing the New York statute. A legislature may effectively provide that a debtor may not transfer away an acquired property interest fast enough to prevent a previously recorded judgment lien from attaching. The lien need not attach at the very instant the interest is acquired for the conveyance to be statutorily blocked in this fashion. The language cited by the *Scarpino* court supporting its conclusion is of no persuasive force in the absence of any discussion of the issues and facts presented by the cases in which the language appears.

## CONCLUSION

The debtor's motion to avoid Weeks' judicial lien is granted, and her plan is con-

---

**2.** In *Thomas*, the judgment debtors filed a chapter 7 bankruptcy after the judgment was recorded. They owned no real property at the time, and the claim was discharged. Years later, they acquired real property. When they later attempted to sell the real property, the judgment appeared as a cloud on title. The judgment creditor refused to release the "lien" without a

court order compelling it to do so. It contended that, although 11 U.S.C. § 524(a)(2) prohibited it from attempting to enforce the lien, nothing compelled it to voluntarily release the lien. The bankruptcy court disagreed with the creditor's contention that it had a judgment lien in the first place.

firmed. The debtor shall submit a proposed order in accordance with this decision.