# United States Bankruptcy Appellate Panel

### For the Eighth Circuit

_____

No. 15-6020

_____

In re: Casey Drew O'Sullivan

*Debtor*

------------------------------

CRP Holdings, A-1, LLC

*Creditor - Appellant*

v.

Casey Drew O'Sullivan

*Debtor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Western District of Missouri - Joplin

_____

Submitted: November 23, 2015
Filed: January 19, 2016

_____

Before KRESSEL, SCHERMER and NAIL, Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge.

Judgment creditor CRP Holdings A-1, LLC appeals the June 4, 2015 order of the bankruptcy court[1] granting the debtor's motion to avoid its judgment lien. We have jurisdiction over this appeal under 28 U.S.C. § 158(c). We affirm.

**BACKGROUND**

The debtor, Casey Drew O'Sullivan, and his wife acquired a residence as tenants by the entirety in November 1995. The residence is located in Barton County, Missouri. CRP obtained a $765,151.18 judgment in the Circuit Court of Platte County, Missouri against the debtor and a related business on January 5, 2015.[2] The judgment was not against the debtor's wife. CRP then filed a Notice of Foreign Judgment,[3] registering the judgment on January 26, 2015, in the Circuit Court of Barton County, Missouri.

The debtor filed a chapter 7 petition on April 3, 2015 and listed his residence in his schedules. He valued the residence at $105,000.00, subject to a $95,134.04 mortgage of Heritage State Bank. He valued his apportioned interest in the residence at $52,500.00 and claimed a $15,000.00 exemption in that interest under both Mo. Rev. Stat. § 513.475 and 11 U.S.C. § 522(b)(3)(B). CRP did not object to the debtor's claimed exemptions. The debtor also filed a motion to avoid CRP's judgment lien against the residence. CRP objected to the motion, acknowledged that it had a judgment lien, but argued that its judgment lien did not attach to the residence. CRP further argued that because its judgment lien did not attach to the residence, then its lien did not fix upon the residence nor impair the debtor's exemption for lien avoidance purposes.

---

[1] The Honorable Cynthia A. Norton, United States Bankruptcy Judge for the Western District of Missouri.

[2] The file date stamp on the top of the judgment order is January 5, 2014, but the date next to the judge's signature is January 5, 2015, which serves as the effective date of the order.

[3] The Notice of Foreign Judgment does not include the name or address of the debtor, but no party disputes its validity.

In deciding the motion, the bankruptcy court looked at § 522(f)(1)'s provision that a debtor "may avoid the fixing of a lien on an interest of the debtor in property . . . ." The court then referred to *Farrey v. Sanderfoot*, 500 U.S. 291 (1991), to ascertain the meaning of "fixing" as used in § 522(f)(1). The court noted that *Farrey* defined "fixing" as a temporal event, the "fastening of a liability" onto an interest of the debtor. The court then noted that the Missouri judgment lien statute provides that judgments "shall be liens on the real estate of the person against whom they are entered, situate in the county for which or in which the court is held." Construing *Farrey*'s definition of "fixing" relative to the Missouri statute for judgment liens, the bankruptcy court concluded as a matter of law that CRP's judgment lien "affixed" to the residence. The court then conducted a § 522(f)(2) exemption impairment analysis[4] and determined that CRP's lien impaired the debtor's exemptions. The bankruptcy court then entered an order overruling CRP's objection and granting the debtor's motion. CRP timely appealed.

In the bankruptcy court, CRP argued that its judgment lien did not attach to the residence and therefore did not fix upon the residence. On appeal, CRP concedes that its judgment lien attached to the residence, but argues that its judgment lien did not fix upon the debtor's tenant by the entirety property interest in the residence, because the debtor did not have an interest to which its judgment lien could fix.

**STANDARD OF REVIEW**

This appeal turns on the bankruptcy court's interpretation of law, which we review *de novo*. *In re Cleaver*, 407 B.R. 354, 356 (B.A.P. 8th Cir. 2009).

**DISCUSSION**

In the absence of an objection, property claimed as exempt is exempt. 11 U.S.C. § 522(l). Exempt property is not liable during or after the case for any debts,

---

[4] CRP does not challenge this part of the bankruptcy court's decision.

except debts secured by liens not avoided. *See* 11 U.S.C. § 522(c)(2) (stating that exempt property is liable during and after the case for debts secured by liens not avoided under § 522(f)). Thus, valid, pre-bankruptcy judgment liens ordinarily survive the bankruptcy case and can be enforced on exempt property, unless such liens are avoided. *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991). The debtor claimed a $15,000.00 exemption in his homestead interest under both Mo. Rev. Stat. § 513.475, Missouri's homestead exemption statute, and 11 U.S.C. § 522(b)(3)(B), which applies to a tenant by the entirety property interest exempt under applicable nonbankruptcy law. CRP did not object to the debtor's exemptions. Accordingly, the debtor's residence is exempt in the claimed amount. CRP objects, however, to the debtor's lien avoidance motion.

Section 522(f)(1)(A) permits a debtor to avoid the lien of a judgment on exempt property; it provides:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
> (A) a judicial lien, other than a judicial lien that secures a debt of kind that is specified in section 523(a)(5);

11 U.S.C. § 522(f)(1)(A). A "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). A "lien" is "a charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The term "lien" is "very broad" and "includes inchoate liens." H.R. Rep. No. 95-595, at 312 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6269. The lien at issue in this case was obtained by a judgment and thus falls within the scope of § 522(f)(1)(A).

The Supreme Court held that under § 522(f)(1), a debtor cannot avoid a lien, unless the debtor acquired the property interest before the lien fixed. *Farrey v. Sanderfoot*, 500 U.S. 291, 301 (1991). In the Court's view, in that portion of

4

§ 522(f)(1) which read, "the debtor may avoid the fixing of a lien on an interest . . . in property," "fix" meant to "fasten a liability upon," *id.* at 296, and "fixing" referred to a "temporal event," *id.*, or the "timing of an event," *id.* at 296 n.3, so that the "fixing of a lien" meant "the fastening of a liability," *id.* at 296. "Fixing," then, presupposed an object to which a liability can fasten. *Id.* Thus, to avoid the fixing of a judicial lien on an interest of the debtor in property under § 522(f)(1), a debtor must have "possessed the interest to which the lien fixed, before it fixed." *Id.* at 299–301. As one court stated, and whose reasoning was relied upon in *Farrey*, § 522(f)(1)'s use of "the phrase 'an interest in property of the debtor' rather than 'property of the debtor' prohibits the avoidance of a lien which has attached prior to the debtor's acquisition of the property." *In re McCormick*, 18 B.R. 911, 914 (Bankr. W.D. Pa.). In addition, *Farrey* did not make any distinctions under state law between "fixed" and "attached." Instead, *Farrey* equated both with "fasten." *Farrey* used the term "fixed" interchangeably with the term "attached" when it stated, "Therefore, unless the debtor had the property interest to which the lien *attached* at some point before the lien *attached* to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)." 500 U.S. at 296 (emphasis added). Applying *Farrey*'s construction of § 522(f)(1) to this case, we must determine whether the debtor had an interest in the residence, to which CRP's judgment lien later attached.

The debtor's property interest is a question of state law. Title to the residence was conveyed to the debtor and his wife as husband and wife by a general warranty deed in 1995. There is no indication that ownership of the residence changed since that time. Under Missouri law, a property conveyance to a husband and wife as co-grantees presumably creates a tenancy by the entirety, in such that a single entity— the marital community— owns the estate, and neither spouse has a right, title, or interest alienable by his or her sole act. *Fed. Nat'l Mortg. Ass'n v. Pace*, 415 S.W.3d 697, 703 (Mo. Ct. App. 2013) (citation omitted). The parties agree that the debtor acquired a tenant by the entirety property interest in the residence in 1995. So clearly, the debtor had an interest in the property before CRP's judgment lien arose.

5

The next inquiry is when CRP's purported judgment lien fixed to the residence. "The lien of a judgment upon realty in Missouri is founded on statute." *Macke v. Byrd*, 33 S.W. 448, 449 (Mo. 1895). In Missouri:

> 1. *Judgments* and decrees entered by the supreme court, by any United States district or circuit court held within this state, by any district of the court of appeals, by any circuit court and any probate division of the circuit court, except judgments and decrees rendered by associate, small claims and municipal divisions of the circuit courts, *shall be liens on the real estate of the person against whom they are entered, situate in the county for which or in which the court is held.*
> . . . .

Mo. Rev. Stat. § 511.350 (emphasis added). The judgment lien "commences upon entry of the judgment," Mo. Sup. Ct. R. 74.08, and extends to real estate owned at and after entry of the judgment, Mo. Rev. Stat. § 511.360. Filing a transcript of the judgment with the clerk of a circuit court in another county constitutes a lien on the judgment debtor's real estate located in the county of the registering court. Mo. Rev. Stat. § 511.440; Mo. Sup. Ct. R. 74.13. "Real estate," as used in the statutes, means "all estate and interest in lands, tenements and hereditaments liable to be sold upon execution." Mo. Rev. Stat. § 511.010. Judgment liens attach "only to 'lands, tenements and hereditaments liable to be sold upon execution.'" *Smith v. Thompson*, 69 S.W. 1040, 1042 (Mo. 1902). CRP obtained a judgment on January 5, 2015 and filed a Notice of Filing of Foreign Judgment on January 26, 2015. CRP assumes, and no party objects, that by operation of Missouri law governing judgment liens, its judgment lien[5] attached to the residence upon the filing of its Notice of Foreign

---

[5] CRP relies on the filing of its judgment as the basis of its judgment lien under the Missouri statutes providing for judgment liens on the debtor's "real estate." However, section 511.010 of the Missouri statutes defines "real estate" as "all estate and interest in lands, tenements and hereditaments *liable to be sold upon execution.*" Missouri common law provides that property under a tenancy by the entirety is not liable for execution for the individual judgment debt of one spouse. In addition, Missouri statute § 513.475 provides a homestead exemption from attachment and execution, up to a certain amount. Thus, although not addressed by either party in the bankruptcy court or on appeal, we have serious doubts as to whether CRP has a lien at all, much less one that attached or fixed to the debtor's interest in property.

Judgment. Accordingly, any fixing of CRP's judgment lien occurred in January 2015, which is after the debtor acquired his interest in his residence.

Having ascertained that CRP's lien fixed after the debtor acquired an interest in property, we would generally end our inquiry. If we read *Farrey* as permitting lien avoidance when the timing of the lien arose subsequent to the timing of the debtor's ownership in property, then the debtor prevails since the lien arose subsequent to the debtor's acquisition of the residence. But CRP argues that *Farrey* requires a lien to have attached under relevant law in a technical, enforceable sense in order for a debtor to avoid a lien. We disagree. The lien avoidance issue in *Farrey* was cabined to the timing of the lien. The Court did not decide whether the lien actually fixed upon a debtor's interest in property. There was no dispute as to the fixing, the enforceability, or the attaching of the lien in a technical sense under state law. To the contrary, the Court proceeded on the assumption that the parties correctly characterized the state law providing the property interest and lien. 500 U.S. at 299. Clearly the Court felt that Congress intended a less restrictive meaning of "fixing" under § 522(f)(1) than the technical meaning that CRP urges us to adopt.

To support its contention that its judgment lien did not attach to the debtor's interest in the residence, CRP argues that tenants by entirety property is not liable for the judgment debt of one spouse. Property held by tenants by the entirety is not subject in any way to the judgment of only one spouse; neither can the judgment "affect any supposed separate interest of the husband, for he has no separate interest." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shackelford*, 591 S.W.2d 210, 215 (Mo. Ct. App. 1979). "Upon the death of one spouse the surviving spouse continues to hold the whole title because there is no one to share it—not because of survivorship, which effects a change in the person only and not the estate." *United States Fid. & Guar. Co. v. Hiles*, 670 S.W.2d 134, 137 (Mo. Ct. App. 1984) (citation and quotation omitted). No tenant by the entirety can "convey his or her interest without being joined by the other" and "the interest of neither one could be levied upon or sold under judgment against such one." *Mahen v. Ruhr*, 240 S.W. 164, 166 (Mo. 1922) (citation omitted). The lien of a judgment attaches only to property liable

7

to be sold upon execution. *Smith v. Thompson*, 69 S.W. 1040, 1042 (Mo. 1902). At the time of the docketing and registration of the judgment, the debtor and his spouse owned the residence under a tenancy by the entirety. CRP's judgment was not rendered against his spouse, so under the preceding authority, the residence was not liable to be sold upon execution. Therefore, CRP argues, the docketing and registration of its judgment did not attach an enforceable lien on the residence.

All of that is true. Missouri law is very restrictive in terms of what constitutes a valid, enforceable judgment lien, but § 522(f)(1), however, uses a less restrictive meaning of "fix" for lien avoidance purposes. Congress explained that the purpose of lien avoidance in § 522 was to allow the debtor to "void *any* judicial lien on exempt property." H.R. Rep. No. 95-595, at 126 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6087 (emphasis added). If only choate liens or perfected liens were avoidable, then Congress would have used a technical term such as "attach." Instead, Congress used "fixing," which promotes the avoidance of any judicial liens, even inchoate, unenforceable, or unperfected judicial liens. In addition, Congress stressed that the term "lien" was "very broad" and "includes inchoate liens." H.R. Rep. No. 95-595, at 312 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6269. Therefore, the meaning of "fixing" as used under § 522(f)(1) is very broad to include the fixing of any lien, even unenforceable or unperfected liens. Even if we concede that the residence was not subject to CRP's lien and that the lien was therefore unenforceable, we would still find that an unenforceable judgment lien arose, so that it is possible for the debtor to avoid it under § 522(f).

As we discussed earlier, the Supreme Court recognized that Congress did not mean to limit the word "fixing" in § 522(f)(1) to the technical sense of "attachment" or any other state law technical characterization. In Congress's mind, a judgment should not impair an exemption in any sense. Congress picked the term "fixing" to

describe the action creating the impairment.[6]  Anything that casts a cloud or diminishes the value of an exemption is suspect and can be avoided.

Further, even if the docketing and registration of CRP's judgment lien did not attach an enforceable judgment lien to the residence, at a minimum, the judgment lien creates a cloud on the title to the residence.  In Missouri, judgment liens which appear to be facially valid against a judgment debtor's property, but which, in effect, cannot be enforced against the property because such judgment liens did not attach to the property, can nonetheless create clouds upon the title to the property, affecting the marketability of title to the property, the value of the real estate, or the judgment debtor's disposition of the property.  *See Rodgers v. First Nat. Bank of Appleton City*, 82 Mo. App. 377, 381–85 (Mo. Ct. App. 1900) (finding that filing a transcript of the judgment created a cloud upon the title and rights of the judgment debtor to his real estate, when the judgment creditor did not have the right to enforce the judgment against the debtor's homestead:  "The defendant, by filing the transcripts of its judgments, has cast a cloud over the title of the grantees, and caused the validity thereof to be doubted; and has thereby succeeded in depreciating its market value.").  Permitting lien avoidance in this instance avoids such a result by undoing any cloud on the title to the residence.  This result provides the debtor with a fresh start.  *See* H.R. Rep. No. 95-595, at 118 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6079 ("[B]ankruptcy relief should be effective, and should provide the debtor with a fresh start.").  And this result promotes Congressional intent for codifying lien avoidance. *See* H.R. Rep. No. 95-595, at 126 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6087 ("The debtor may void any judicial lien on exempt property . . . .  [This] right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy.").

---

[6] While it is common for attorneys, courts, and sometimes Congress to talk about "avoiding" liens, virtually all avoidance powers in the Code speak about avoiding a transfer, i.e., the action creating the impairment.  Indeed, the term "transfer" includes "the creation of a lien."  11 U.S.C. § 101(54)(A).  Thus, Congress needed to choose an expansive term to express this action in § 522(f)(1).  It chose "fix," or more precisely, its gerundial form, "fixing."

The fact that CRP so strenuously contests the motion indicates that it thinks that its judgment or judgment lien has value. Of course, the judgment or judgment lien has value to CRP only if it diminishes or impairs the debtor's exemption.

**CONCLUSION**

For the reasons stated above, we AFFIRM.

_____