# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1526
_____

In re: Casey Drew O'Sullivan

*Debtor*

------------------------------

CRP Holdings, A-1, LLC

*Appellant*

v.

Casey Drew O'Sullivan

*Appellee*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit
_____

Submitted: September 22, 2016
Filed: November 14, 2016
_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.
_____

MURPHY, Circuit Judge.

Casey Drew O'Sullivan filed for Chapter 7 bankruptcy and claimed a $15,000 exemption in a homestead he owned as a tenant in the entirety with his wife. O'Sullivan then sought an order from the bankruptcy court avoiding CRP Holdings, A-1, LLC's (CRP) judicial lien on the homestead property to the extent that it impaired his claimed exemption. The bankruptcy court granted O'Sullivan's motion to avoid CRP's judicial lien, and the bankruptcy appellate panel (BAP) affirmed. See In re O'Sullivan, 544 B.R. 407 (B.A.P. 8th Cir. 2016). Judgment creditor CRP appeals, asserting that its judicial lien is not subject to avoidance. We reverse and remand to the bankruptcy court for further proceedings.

I.

In 2015 CRP obtained a default judgment in Platte County, Missouri circuit court against O'Sullivan and his business in the amount of $765,151.18. O'Sullivan's wife was not included in the judgment, but she and her husband owned property in Barton County, Missouri (the property) as tenants in the entirety. After obtaining the default judgment, CRP filed a notice of foreign judgment with the Barton County circuit court in an attempt to obtain a judicial lien on that property. See Mo. Rev. Stat. § 511.440.

A few months later O'Sullivan filed a voluntary Chapter 7 bankruptcy petition which his wife did not join. O'Sullivan listed the property in his schedules and claimed a $15,000 homestead exemption under both Mo. Rev. Stat. § 513.475 and 11 U.S.C. § 522(b)(3)(B). O'Sullivan simultaneously moved to avoid CRP's purported judicial lien under 11 U.S.C. § 522(f)(1), asserting that the lien impaired his claimed homestead exemption. The bankruptcy court granted the motion, concluding that "CRP's judgment lien – although perhaps not enforceable – certainly affixed upon [O'Sullivan's] home upon CRP's recording of its judgment in Barton County" and therefore impaired O'Sullivan's claimed exemption.

CRP appealed to the BAP, which affirmed the bankruptcy court order. The BAP similarly concluded that "an unenforceable judgment lien arose" on the property held in the entireties and therefore it was "possible for [O'Sullivan] to avoid it under § 522(f)." In re O'Sullivan, 544 B.R. at 413. CRP appeals the BAP's affirmance of the bankruptcy court order avoiding its purported judicial lien.

## II.

CRP challenges the BAP's conclusion that O'Sullivan could avoid its purported judicial lien on the property. We have jurisdiction to review final decisions of the BAP under 28 U.S.C. § 158(d). When reviewing a decision of the BAP, "we act as a second reviewing court of the bankruptcy court[] decision, independently applying the same standard of review as the BAP." In re Lasowski, 575 F.3d 815, 818 (8th Cir. 2009). This appeal turns on the bankruptcy court's interpretation of law which we review de novo. Id.

Chapter 7 of the bankruptcy code provides a means for insolvent debtors to receive a "fresh start" through bankruptcy proceedings. In re Thompson, 750 F.2d 628, 630 (8th Cir. 1984). To ensure that debtors have sufficient property to realize fully that fresh start, the code permits debtors to exempt certain property from their bankruptcy estate. See 11 U.S.C. § 522(b). Ordinarily, "liens and other secured interests survive bankruptcy" and can subsequently be levied against a debtor's exempted property, thereby impeding a debtor's ability to obtain a fresh start. Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991); see 11 U.S.C. § 522(c). To shield exempt property from such post bankruptcy collection efforts, 11 U.S.C. § 522(f)(1) provides a mechanism for bankruptcy courts to avoid, or extinguish, secured debts that would otherwise pass through the bankruptcy proceeding.

Under § 522(f)(1), debtors may move to "avoid the fixing of [certain] lien[s] on an interest of the debtor in property to the extent that such lien[s] impair[] an

exemption to which the debtor would have been entitled under [§ 522(b)]." To avoid the fixing of CRP's purported judicial lien, O'Sullivan therefore had to establish that CRP's notice of foreign judgment had (1) created an avoidable lien under § 522(f)(1), that (2) affixed on O'Sullivan's interest in property exempted under § 522(b), and (3) impaired O'Sullivan's claimed exemption in the property. CRP does not challenge O'Sullivan's claimed $15,000 homestead exemption or the bankruptcy court's impairment analysis. The only contested issues on appeal are whether a judicial lien existed and, if so, whether that lien affixed on O'Sullivan's interest in the property.

Throughout the bankruptcy proceedings and on appeal, neither party has addressed whether CRP had a judicial lien properly subject to avoidance under § 522(f)(1)(A). Rather, the parties and the bankruptcy court assumed that CRP had a cognizable judicial lien under Missouri law. On appeal, the BAP noted that it had "serious doubts as to whether CRP has a lien at all, much less one that attached or fixed to [O'Sullivan's] interest in property," but nonetheless proceeded with the avoidance analysis. In re O'Sullivan, 544 B.R. at 412 n.5. Like the BAP, we have serious doubts as to whether CRP has a lien that affixed onto O'Sullivan's interest in the property. Unlike the BAP, however, we do not think we can definitively rule on the avoidance motion in the absence of such a finding.

The bankruptcy code defines "judicial liens" as liens "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). Judicial liens are a subset of "liens," which are defined as "charge[s] against or interest[s] in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). This definition of "liens" suggests that both unenforceable "charge[s] against" property and enforceable "interest[s] in" property fall within its scope. That interpretation is bolstered by the legislative history of the Bankruptcy Reform Act which itself states that the definition of lien is "very broad" and "includes inchoate liens." S. Rep. No. 95-989, at 25 (1978); H.R. Rep. 95-595,

at 312 (1977). We agree with the BAP that unenforceable liens may be avoided under § 522(f)(1).

The question then is whether CRP's notice of foreign judgment created a lien on the property—either enforceable or unenforceable. As the BAP noted, there is a strong argument that it did not. Entireties property "is owned by a single entity, the marital community." Fed. Nat'l Mortg. Ass'n v. Pace, 415 S.W.3d 697, 703 (Mo. Ct. App. 2013). Missouri state court judgments, such as the default judgment CRP obtained against O'Sullivan, are "lien[s] upon the real estate of the person against whom such judgment . . . is entered" located within the same county as the judgment. Mo. Rev. Stat. § 511.440 (emphasis added); see also Mo. Rev. Stat. § 511.350. Thus, when CRP filed its notice of foreign judgment, it created a judicial lien on any "real estate" owned by O'Sullivan in Barton County. "Real estate" itself is narrowly defined as an interest in property "liable to be sold upon execution." Mo. Rev. Stat. § 511.010 (emphasis added). Here, because the real estate was held as entireties property, neither spouse arguably had "a separate interest [in that property] subject to execution," and a judgment filed against only one spouse could not "constitute a lien on the [entireties] property." Baker v. Lamar, 140 S.W.2d 31, 35 (Mo. 1940) (emphasis added). There is thus a strong argument that CRP did not obtain any lien on the property.

The distinction between an existent but unenforceable lien and a non existent lien is relevant to an avoidance analysis under § 522(f)(1). Whether a debtor "possessed an interest to which [a] lien fixed, before it fixed, is a question of state law." Farrey, 500 U.S. at 299. Nevertheless, the Supreme Court has defined the term "fixed" in § 522(f) as to "fasten a liability upon." Id. at 296 (quoting Black's Law Dictionary 637 (6th ed. 1990)). When there is no lien under state law, however, there is nothing to "fasten" upon the property and give rise to an unenforceable lien. As the Tenth Circuit has persuasively concluded, "when state law does not allow a lien to

-5-

attach to exempt property, § 522(f) is superfluous and without application." In re Sanders, 39 F.3d 258, 262 (10th Cir. 1994).

The distinction between existent but presently unenforceable liens and nonexistent liens is reflected in the decisions of other appellate courts analyzing § 522(f). Both the Sixth and Tenth circuits have declined to avoid purported judicial liens in cases where a judgment did not give rise under state law to a judicial lien on the exempted property (not even an unenforceable one). While interpreting Colorado law, the Tenth Circuit concluded that the judicial liens at issue "never became liens upon the debtors' homestead" and therefore it was unnecessary to use § 522(f) "to avoid the judgment liens at issue." In re Shafner, No. 94-1602, 1996 WL 98809, at *2 (10th Cir. Mar. 6, 1996); see also In re Sanders, 39 F.3d at 262 (same under Utah law). Similarly, while interpreting Tennessee law, the Sixth Circuit concluded that a debtor could not avoid a judgment creditor's lien because the lien did not attach to the debtor's exempt present possessory interest in the homestead (held with the debtor's spouse as tenants in the entirety). In re Arango, 992 F.2d 611, 615 (6th Cir. 1993). Rather, the debt attached to the debtor's non exempt future interest in the right of survivorship, which was separately included in the bankruptcy estate. Id.

By contrast, the Fifth Circuit permitted a debtor to avoid a purported judicial lien against exempt property because under Texas law the lien at issue "fasten[ed] a liability against the . . . homestead – albeit an unenforceable one." In re Henderson, 18 F.3d 1305, 1309 (5th Cir. 1994). In that case, the Fifth Circuit relied on a Texas state court decision holding that a homestead "is not exempt from [a] perfected lien" but rather "is exempt from any seizure attempting to enforce [a] perfected lien." Id. (quoting Exocet Inc. v. Cordes, 815 S.W.2d 350, 352 (Tex. Ct. App. 1991)). We are persuaded by the distinctions drawn by other appellate courts and conclude that where a judgment gives rise to an unenforceable lien, a debtor may move to avoid that lien under § 522(f). When a judgment fails to give rise to any judicial lien (including an unenforceable lien), however, § 522(f)(1) is superfluous and without application.

In sum, if under Missouri law CRP's notice of foreign judgment failed to give rise to a lien on O'Sullivan's exempt homestead property, the debt would have been dischargeable through the bankruptcy proceedings. O'Sullivan would then not need to resort to § 522(f) to avoid CRP's judgment. Alternatively, O'Sullivan could move to avoid the lien under § 522(f)(1) if CRP's notice of foreign judgment fastened an existent, but presently unenforceable, lien on his exempt property.

We decline to undertake the question of whether there is a cognizable lien under § 522(f)(1) in the first instance. Rather, "[o]ut of prudence, we believe it is appropriate to allow the [bankruptcy] court to address this issue in the first instance," thereby "permit[ting] adequate vetting through the adversarial process." Montin v. Estate of Johnson, 636 F.3d 409, 416 (8th Cir. 2011).

III.

Accordingly the BAP's decision is vacated, and the matter is remanded to the bankruptcy court for it to determine whether CRP has a judicial lien on the property (either enforceable or unenforceable).

_____